# 2003 DTA 101

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE CAROLINA-FAJARDO

OMAYRA MALDONADO GUADALUPE POR SI Y COMO REPRESENTANTE DE SUS HIJOS MENORES DE EDAD, CORALIS RODRIGUEZ MALDONADO, EMMANUEL RODRIGUEZ MALDONADO Y ALRREDO RODRIGUEZ MALDONADO; ETC.
Apelantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, POLICIA DE P.R., CARLOS MONGE Y LA SOCIEDAD DE BIENES GANANCIALES QUE COMPONE CON SU ESPOSA
Apelados

Núm. KLAN-03-00161

San Juan, Puerto Rico, a 10 de junio de 2003

Panel integrado por su Presidente, el Juez Miranda De Hostos, la Juez Hernández Torres y el Juez Martínez Torres

Miranda De Hostos, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante Omayra Maldonado Guadalupe, *et als.*, acude de una sentencia del Tribunal de Primera Instancia, Sala Superior de Fajardo, que declaró sin lugar la demanda sobre daños y perjuicios que ésta presentara en contra de la parte apelada E.L.A., *et als.*

Alega, en síntesis, que erró el tribunal de instancia al aquilatar la prueba presentada.

Se confirma la sentencia apelada. Veamos los fundamentos.

### I

El 10 de mayo de 2000, la parte apelante presentó demanda sobre daños y perjuicios en contra de la parte apelada, el E.L.A., la Policía de Puerto Rico y el agente Carlos E. Monge Cruz. Alegó que el 15 de mayo de 1999, la parte apelada, el agente Carlos E. Monge Cruz, mientras realizaba una intervención con la parte apelante Omayra Maldonado Guadalupe y el fallecido Alfredo Rodríguez Rosa de 33 años, por una querella sobre violencia doméstica presentada por el hermano del fallecido Humberto Rodríguez Rosa, negligentemente mató a Alfredo Rodríguez de un disparo en el abdomen mientras éste sujetaba un machete en su mano derecha. (Ap., págs. 1-8.)

El juicio en su fondo se celebró el 7 de agosto de 2002, en el cual los siguientes documentos fueron sometidos por estipulación de las partes: 1) dos (2) fotos de la residencia; 2) informe de la autopsia; 3) foto del machete; 4) tres (3) fotos del revolver; 5) foto de las balas; 6) dos (2) fotos del muerto; 7) la declaración jurada del agente Carlos E. Monge Cruz; 8) la declaración jurada del agente José Alicea Delgado; y 9) la investigación administrativa.

La parte apelante presentó como prueba documental la declaración jurada de la esposa del fallecido Omayra Maldonado Guadalupe y como prueba testifical, los hermanos del fallecido Humberto Rodríguez Rosa y Maribel Rodríguez Rosa, el hijo del fallecido, el menor Alfredo Luis Rodríguez Maldonado, el psicólogo Iván Rosario Villafañe, el padre del fallecido Alfredo Rodríguez Suárez quien no estaba presente al momento de los hechos y la esposa del fallecido Omayra Maldonado Guadalupe. La parte apelada presentó como prueba

testifical los agentes Carlos E. Monge Cruz y José Alicea Delgado. (Ap., págs. 26-27.)

El hermano del fallecido Humberto Rodríguez Rosa, declaró que el sábado 15 de mayo de 1999, escuchó a su hermano Alfredo Rodríguez discutiendo con su esposa y llamó a la policía, pues sintió temor por la vida de Omayra Maldonado. Al llegar los agentes de la policía, salió corriendo de la casa y su hermano se fue detrás de él con un machete en la mano derecha. La primera mujer policía que llegó en motora, lo detuvo pensando que el querellado era él. Declaró que cuando Alfredo Rodríguez vio la policía, se detuvo, levantó las manos en actitud de redención y que el agente Monge al bajarse de la patrulla, sin darle el alto, disparó. (E.E.P., págs. 1-3.)

La hermana del fallecido Maribel Rodríguez Rosa, declaró que el día de los hechos su hermano Humberto Rodríguez, llamó a la policía porque su otro hermano Alfredo Rodríguez y su esposa estaban discutiendo. Cuando la policía se personó al lugar, Alfredo Rodríguez fue hacia donde los agentes con el machete en la mano y el agente Monge le dio el alto. Declaró que en ese momento, Alfredo Rodríguez se detuvo, levantó las manos y el agente Monge le disparó. Además testificó que al momento de los hechos, el hijo de Alfredo Rodríguez se fue corriendo detrás de su papá. (E.E.P., págs. 3-4)

El hijo del fallecido Alfredo Luis Rodríguez Maldonado, declaró que cuando llegó la policía su papá estaba corriendo detrás de su tío Humberto Rodríguez y él se fue corriendo detrás de su papá. Que cuando su papá llegó al frente del agente Monge, éste le dio el alto, Alfredo Rodríguez levantó los brazos y el agente Monge le disparó. Declaró que en ese momento se encontraba parado al lado de su papá, agarrado del pantalón. (E.E.P., págs. 4-5.)

La esposa del fallecido declaró que era la primera vez que se llamaba a la policía por un acto de violencia doméstica con su esposo. Que el día de los hechos, cuando llegó la policía, Alfredo Rodríguez buscó el machete y se fue corriendo detrás de su hermano Humberto Rodríguez y ésta sólo escuchó el tiro, pero que no vio cuando le dispararon a su esposo. (E.E.P., págs. 7-9.)

De acuerdo a la exposición estipulada de la prueba, el agente Carlos E. Monge Cruz, declaró lo siguiente:

"...

*VII. AGENTE CARLOS MONGE*

*Me desempeño como policía agente investigador de robos en Fajardo, placa 6018, llevo en la Policía 23 años, desde el 29 de febrero del 1979. Estoy destacado en Fajardo, turno de 8am a 4pm, investigo querellas y hago rondas preventivas. El 15 de mayo de 1999 presté servicio desde las 8 de la mañana. Estaba en la avenida Baralt en Fajardo, haciendo patrullaje. Llama por radio el retén Abadía que investigara una querella de violencia doméstica que estaba en proceso. Llegué rápido, estaba solo en la patrulla, estaba uniformado. Un vecino me señala la casa. Me estaciono al borde de una verja, al fondo. Estaciono la patrulla en la subida a la izquierda mirando hacia arriba. La puerta del chofer estaba contra la columna. En el balcón estaba Humberto. Es una casa de dos plantas. Pregunto por altoparlante. Humberto me señala hacia la casa a la derecha. Abro la puerta, me bajo de la patrulla y me quedo mirando usando la puerta como escudo. Súbitamente, Humberto baja corriendo, no se lo que está pasando. Llega Alicia, la mujer policía en su motora, quien se estaciona detrás de mi patrulla. Ella piensa que es Humberto, el agresor. Alicia va donde Alba, otra agente. Humberto grita que lo quieren matar y ambos caen al piso. Viene Alfredo bajando con un machete. Ya me había salido del área del vehículo y Alicia y Alba tenían a Humberto. Alfredo dice que va a matar a Humberto. Me dice que si no lo mata (sic) a él, me mata a mí. Dice que no va a soltar el machete, que nadie me viene a arrestar, que si no lo mato, él me mata mí, que no le va a hablar, sino que lo va a matar. Da dos pasos. Me cubro con la patrulla, pero Alfredo viene corriendo hacia mí. Le digo que se detenga dos veces. Alfredo no razonaba, sigue avanzando hacia mí. Veo a los nenes gritándole. Cuando veo*

*que me va a agredir con el machete, empujo la puerta de la patrulla, me resbalo y creo que me voy a caer, saco el arma y le hago un disparo. Alfredo cae al pasto, boca abajo, me abalanzo sobre él para quitarle el machete y lo meto al baúl. Alfredo estaba herido en el vientre. Era una persona fuerte, tuve que hacer fuerza con él, lo esposamos para llevarlo al hospital. Un vecinos (sic) de allí nos ayudó a meterlo en la patrulla, no se su nombre. Decía que lo matara, que no lo dejara vivo porque me iba a matar. Yo no conocía a nadie en esa casa antes de ese día. El incidente duró unos 10 minutos. Había gente mirando. Estaba Humberto, los nenes, Maribel, no recuerdo haber visto a Omayra. Al momento del disparo, el agente Alicea se encontraba con la agente que protegía a Humberto Rodríguez Rosa (sic).*

*Luego del incidente, se ocuparon el machete, se retrató la escena, entregué el machete. El disparo le dio en el abdomen (estómago). Fue un sólo disparo. Estaba entre 10-12 pies de distancia en ese momento. Muchas veces le di el alto, pero Alfredo siguió avanzando. Estaba fuera de sí. No levantó las manos, sólo la que tenía el machete, su mano derecha. Nunca se detuvo. No soy un asesino. Alfredo no razonaba. Luego me entero que había muerto. Anteriormente intervine en 50-60 casos de violencia doméstica. Nunca había herido de bala a nadie, pero sí los había arrestado. Cuando ví (sic) a Alfredo comportandose (sic) de ese modo, me fui en blanco y disparé. (Enfasis suplido.)*

*...".*

(E.E.P., págs. 10-11)

Por último, el agente José Alicea Delgado declaró lo siguiente:

"...

*AGENTE ALICEA*

*Soy agente investigador de homicidios, llevo 7 años en la Policía en el distrito de Fajardo, investigador de querellas, placa 22902. Turno de 8am a 4 de la tarde. Estaba haciendo la ronda cuando recibo la llamada sobre la querella de violencia doméstica en el Barrio Las Croabas, conozco el sitio. No recuerdo el sitio ni cuánto tarde en llegar. Monge iba delante de mi patrulla, me bajo cuando llego y veo un individuo. Monge se estaciona y yo estoy detrás en un Crown Victoria. Veo un tipo en una verja. No recuerdo bien la posición de la verja. Luego se que es el hermano, Humberto. No recuerdo bien la verja. **Preguntamos por el querellante, oigo que alguien grita, "corre que te mata". Humberto baja corriendo. La agente Cintrón lo detiene. De repente viene este señor con un machete. Yo estaba detrás de Monge, pensaba que era un familiar y que Humberto era el agresor. Omayra gritaba "No lo mates, no lo mates". Monge le da el alto. Alfredo le dice tú no me vas a arrestar, primero te mato. Se les (sic) abalanza encima con el machete en la mano. Cuando está bastante cerca, Monge le dispara.** Tratamos de esposarlo, forcejeaba. Lo montamos en la patrulla y lo llevamos al hospital. Cintrón nos escolta. En el hospital, Alfredo siguió gritando, no se dejaba atender. Yo me fui del hospital y luego me entero que había fallecido. Durante el incidente, yo me mantuve con Monge, no intervine con Humberto. Desde que llegamos hasta que nos vamos pasan 5 minutos.*

*No recuerdo haber visto niños en la escena ni a Maribel. A la esposa sí. No ví (sic) ningún niño con Alfredo. Alfredo tenía los ojos rojizos, desorbitados, estaba fuera de sí. (Énfasis suplido.)*

*...".*

(E.E.P., págs. 11-12.)

Así las cosas, el 20 de noviembre de 2002, el tribunal de instancia emitió sentencia declarando sin lugar la

demanda de daños y perjuicios presentada por la parte apelante. (Ap., págs. 15-21.) Determinó el foro apelado lo siguiente:

"...

*La prueba presentada es clara y no fue contravertida (sic) en el sentido de que el Sr. Alfredo Rodríguez Rosa estaba armado con un machete y proyectaba tener una actitud hostil y agresiva. Tampoco está en controversia que los agentes de la Policía estaban actuando en sus funciones oficiales investigando una querella de violencia doméstica. El agente Carlos E. Monge Cruz le pidió al Sr. Alfredo Rodríguez Rosa que soltara el machete. No soltó el machete y continuó avanzando hacia la persona del agente. El agente hizo un sólo disparo en el área del abdomen.*

*Es imposible saber lo que pasó por la mente del agente Carlos E. Monge Cruz y del Sr. Alfredo Rodríguez Rosa en esos momentos; mas sí podemos hacer una inferencia razonable. ¿Fue prudente y razonable que el agente sintiera temor por su vida? Entendemos que sí.*

*El agente Carlos E. Monge Cruz cumplió con sus deberes, funciones y responsabilidades obedeciendo y acatando a ley.* **No le fueron presentados cargos criminales en su contra, ni fue sancionado administrativamente por la Policía de Puerto Rico.**

**El agente Carlos E. Monge Cruz tenía la creencia razonable de que podía sufrir un daño inminente, había necesidad racional de usar el arma de reglamento, no había provocado al Sr. Alfredo Rodríguez Rosa; de hecho, no lo conocía, no infligió más daño del necesario, sólo hizo un disparo en el abdomen, luego de haberle pedido que soltara el machete que tenía en su mano y entendía que se encontraba en inminente peligro de grave daño corporal; inmediatamente los agentes presentes montaron al herido en una patrulla y fue llevado al hospital.**

*En cuanto al Estado Libre Asociado de Puerto Rico, en representación de la Policía de Puerto Rico, no surge ninguna prueba que demuestre negligencia en la supervisión o en el entrenamiento brindado al agente Carlos E. Monge Cruz. (Énfasis suplido.)*

...".

(Ap., pág. 20.)

Inconforme con la determinación del tribunal de instancia, la parte apelante Omayra Maldonado Guadalupe, *et als*., acude ante nos.

## II

Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la norma jurídica aplicable.

## A

**La responsabilidad extracontractual**

En materia de responsabilidad extracontractual, el artículo 1802 del Código Civil establece que quien por su culpa o negligencia cause daño a otro, tiene el deber jurídico de repararlo. 31 L.P.R.A. sec. 5141; *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 176 (1996).

Para determinar si existe una causa de acción bajo el artículo 1802, *supra*, es necesario: 1) la existencia de

un daño real; 2) culpa o negligencia; y 3) relación causal entre el daño causado y la conducta culposa o negligente. *Las Sucesiones de Francisco Vega Marrero y Otros v. A.E.E.,* opinión de 21 de septiembre de 1999, **99 J.T.S. 145**, pág. 63; *Cintrón Adorno v. Gómez,* 147 D.P.R. 576, 598-599 (1999).

Nuestro más alto foro ha expresado que la culpa o negligencia es la falta del debido cuidado, es decir, el no anticipar y prever las consecuencias racionales de un acto u omisión, que una persona prudente y razonable hubiera previsto en las mismas circunstancias. Sin embargo, el deber de anticipar y prever no comprende todo peligro imaginable, sino a aquél que llevaría a una persona prudente y razonable a preverlo. *Montalvo Feliciano v. Cruz Concepción,* 144 D.P.R. 748, 755-756 (1998); *Las Sucesiones de Francisco Vega Marrero y Otros v. A. E.E., supra.*

Para determinar la previsibilidad del daño, no es necesario que se haya anticipado el mismo en la forma precisa en que ocurrió, pues basta con que el daño ocasionado sea la consecuencia natural y probable del acto u omisión. *Las Sucesiones de Francisco Vega Marrero y Otros v. A.E.E., supra; Tormos Arroyo v. D.I.P.,* 140 D.P.R. 265, 274 (1996).

## B
## Pleitos contra el Estado por los daños causados por sus funcionarios, agentes o empleados

El artículo 2 de la Ley Núm. 104 de 29 de junio de 1955, conocida como la Ley de Reclamaciones y Pleitos contra el Estado, dispone que:

*"Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas:*

*"(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil (75,000) dólares causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia.*

*..."*.

32 L.P.R.A. sec. 3077.

De acuerdo a la Ley de Reclamaciones y Pleitos contra el Estado, *supra,* para que un demandante en daños y perjuicios por los actos u omisiones de un empleado, agente o funcionario prevalezca en el pleito, deberá probar la concurrencia de los siguientes elementos: 1) que la persona que causó el daño era agente, funcionario o empleado del Estado y que al momento de causar el daño, actuó en su capacidad oficial; 2) que el agente, funcionario o empleado actuó dentro del marco de sus funciones; 3) que la actuación del agente, funcionario o empleado fue negligente y no intencional; y 4) que existe una relación causal entre la conducta culposa y el daño producido. *Leyva et al. v. Aristud et al.,* 132 D.P.R. 489, 510 (1993).

Una vez el demandante establezca los elementos antes enumerados, el Estado puede ser responsable y estar exento de inmunidad cuando: 1) el empleado, agente o funcionario que causó el daño por su exclusiva culpa o negligencia, se desempeñaba en sus funciones o capacidades oficiales; 2) la actuación fue *"preponderantemente negligente"*, aun cuando dicha conducta tenga algunos elementos intencionales; 3) el acto que causó el daño fue intencional; sin embargo, existen otros actos negligentes separados, cocausantes del daño por los cuales responde el Estado. Si la actuación de los agentes, empleados o funcionarios fuera prevista o previsible, aun cuando fuera intencional, se le puede imponer responsabilidad al Estado y no le cobija la inmunidad. *Leyva et al. v. Aristud et al., supra,* págs. 510-511.

Por otro lado, sobre la responsabilidad del Estado por las actuaciones negligentes de un agente del orden público, debemos recordar que durante el desempeño de sus funciones, el uso de la fuerza física depende del juicio personal que realice el agente en el momento de los hechos. Por ello, es suficiente que cuando el agente realice un disparo en legítima defensa, sintiera temor por su vida al ser amenazado por el perjudicado. *Cruz v. Sierra Maya y otros*, 133 D.P.R. 871, 877 (1993).

Sobre el particular, nuestro más alto foro expresó:

"...

*[...]. Habrá responsabilidad si se establece suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado por razón del ejercicio de funciones expresas o implícitas.*

...

*[...]. Se trata más bien de una cuestión de grado, cuya solución depende de distintos factores, tales como la gravedad de la actuación, los móviles del agente, la ocasión inmediata de la actuación, y la naturaleza de la conexión entre el hecho ilícito y la encomienda del agente."* [...]. *(Citas omitidas.)*

...".

*Sánchez Soto v. E.L.A.*, 128 D.P.R. 497, 506 (1991).

## C
**Alcances de la revisión judicial**

Es norma jurisprudencial reiteradamente establecida aquélla que postula que en el ámbito apelativo no se intervendrá con las determinaciones de hechos y la adjudicación de credibilidad efectuada por el juzgador de los hechos, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Las determinaciones de hechos que hace el foro de instancia, merecen gran deferencia y respeto por la oportunidad que tuvo el juzgador de los hechos de escuchar y observar a los testigos. *Rodríguez Báez v. Nationwide Insurance Company*, opinión de 18 de abril de 2002, **2002 J.T.S. 61**, pág. 1013; *Trinidad García v. Chade*, opinión de 18 de enero de 2001, **2001 J. T.S. 10**, pág. 793. (Casos citados.)

## III
**Aplicación de la norma jurídica**

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.

Alega la parte apelante Omayra Maldonado Guadalupe, *et als.*, que erró el tribunal de instancia al aquilatar la prueba presentada.

No le asiste razón. Veamos porqué.

De un análisis de la exposición estipulada de la prueba presentada, surge que no está en controversia que los hechos se originan porque entre el fallecido Alfredo Rodríguez Rosa y su esposa Omayra Maldonado Guadalupe, ocurrió una discusión conyugal y su hermano Humberto Rodríguez Rosa, llamó a la policía y reportó un acto de violencia doméstica temiendo por la vida de la esposa. Tampoco está en controversia el hecho de que el fallecido Alfredo Rodríguez Rosa, en el momento en que llega la policía, tenía un machete en la mano derecha con la intención de causarle daño a su hermano Humberto Rodríguez Rosa. **Por lo tanto, el**

**comportamiento del fallecido era uno hostil y amenazante contra los policías que intervinieron con él, el día de los hechos.**

Dado que la intervención que realizó el agente Carlos E. Monge Cruz fue una legal y que la actitud del fallecido era una hostil y amenazante, existía razón suficiente para que el agente Monge Cruz razonablemente creyera que estaba en peligro de sufrir inminente grave daño corporal. Más aún, cuando de acuerdo a su testimonio y al del agente José Alicea Delgado, el agente Monge Cruz le pidió al fallecido Alfredo Rodríguez Rosa, que se detuviera y éste no le hizo caso, sino que siguió caminando hacia el agente amenazándolo de matarlo, con un machete en su mano derecha. Además, el agente Monge Cruz sólo hizo un disparo en legítima defensa, ante las circunstancias particulares en que ocurrieron los eventos.

Al momento de realizar el disparo, el agente Monge Cruz estaba en el desempeño de sus funciones, no actuó negligentemente, sino que actuó de manera prudente y razonable al determinar que se encontraba en inminente peligro de sufrir grave daño corporal. Todo ello, pues el fallecido Alfredo Rodríguez Rosa tenía un machete en la mano derecha, actuaba de forma hostil y amenazante, no obedeció las órdenes del agente Monge Cruz de detenerse y continuó caminando hacia el agente amenazándolo de matarlo. Estas circunstancias claramente establecen que el agente Monge Cruz se encontraba ante una situación de grave peligro a su seguridad personal.

En nuestra función apelativa, no debemos cambiar las determinaciones de hechos que haga el foro de instancia de la prueba testifical que tuvo ante sí, pues éste tuvo la oportunidad de observar y escuchar a los testigos. En ausencia de pasión, prejuicio o parcialidad al emitir su dictamen, nos abstendremos de intervenir en la adjudicación y credibilidad que el foro apelado le dio a la prueba testifical que tuvo ante su consideración.

Concluimos que el Tribunal de Primera Instancia no abusó de discreción al aquilatar la prueba presentada y determinar que el agente Carlo E. Monge Cruz actuó en legítima defensa y, por lo tanto, desestimar la demanda sobre daños y perjuicios presentada por la parte apelante Omayra Maldonado Guadalupe, *et als*.

**IV**

Por los anteriores fundamentos, se confirma la sentencia apelada según sus términos y condiciones.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General