ARNALDO SÁNCHEZ SOTO ET AL., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandados y recurridos.

*Número:* RE-88-474 *Resuelto:* 7 de junio de 1991

*Ciro A. Betancourt,* abogado de los recurrentes; *Rafael Ortiz Carrión, Procurador General,* y *Miriam Alvarez Árchilla, Procuradora General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 4 de mayo de 1984 Concepción Rosa Serrano —agente investigador del Cuerpo de Investigaciones Criminales (C.I.C.) de la Policía, con más de catorce (14) años de experiencia— terminó de trabajar a las 8:00 P.M. Accedió a una invitación para jugar dominó. Durante el juego conoció a Juan Romero, quien lo invitó a cenar. Ambos llegaron al restaurante La Tasqueña alrededor de la medianoche. Pidieron unos tragos y algo de comer.

Subsiguientemente, el agente Rosa Serrano se levantó de la mesa y se dirigió al baño para cambiar el revólver Magnum 357 de una cartera a su cintura. Lo hizo para tenerlo más accesible por temor a ser allí reconocido, ya que había realizado antes en el área varias investigaciones y arrestos. Pasó frente a la mesa en que estaban Arnaldo Sánchez Soto y el joven Miguel Girau. En el trayecto sacó el arma y, para examinarla, abrió la recámara o "masa". Al hacerlo, se disparó e hirió a Sánchez Soto. Aun cuando Rosa Serrano fue advertido de lo sucedido, en la confusión del momento no vio señales de la herida y se marchó del lugar.

Ninguno de estos protagonistas se conocía. Tampoco entre ellos —o terceros— había ocurrido incidente o altercado alguno; claro está, hasta el momento de la detonación.

Por estos hechos Sánchez Soto, su esposa y varios familiares demandaron al Estado Libre Asociado y al agente Rosa Serrano en el Tribunal Superior, Sala de Bayamón. Estos negaron responsabilidad.

Luego de varios trámites, dicho foro (Hon. Zulma Zayas Puig, Juez) dilucidó inicialmente el aspecto de responsabilidad. Previa vista evidenciaria, concluyó que la decisión de Rosa Serrano de cambiar el arma de la cartera a la cintura fue motivada por "el temor de ser reconocido" (Apéndice, pág. 16), pues había realizado antes en el área varias investigaciones y arrestos. A juicio suyo,

ello constituyó un "móvil puramente personal". Íd., pág. 18. En consecuencia, eximió al Estado de responsabilidad a base de que el agente Rosa Serrano no actuó en el cumplimiento de sus funciones como policía, según requerido por la Ley de Reclamaciones y Demandas contra el Estado, 32 L.P.R.A. sec. 3077 *et seq.*, y el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142.

A solicitud de Sánchez Soto *et al.*, revisamos.

## I

Incidió la ilustrada sala sentenciadora.(1)

De ordinario, la obligación de reparar un daño dimana de un hecho propio. Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Por excepción, hay responsabilidad por actos ajenos si existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo. Art. 1803 del Código Civil, *supra.*(2) *Vélez Colón v. Iglesia Católica*, 105 D.P.R. 123, 127 (1976).

La Ley de Reclamaciones y Demandas contra el Estado configura esta última situación. Mediante la misma, éste renunció a la inmunidad de ser demandado por los daños "causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona *actuando en capacidad oficial y dentro del marco de su función, cargo o empleo* interviniendo culpa o negligencia". (Énfasis suplido.) 32 L.P.R.A. sec. 3077.

---

(1) En su primer señalamiento Sánchez Soto *et al.* se quejan que dicho foro de instancia no creyera que Rosa Serrano fue advertido de la presencia de un sospechoso en el restaurante.

No lo discutiremos. Bajo esa versión o la acogida por el tribunal, la responsabilidad del Estado no varía.

(2) Dispone, en lo pertinente:

"[L]os dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes *en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.*

El Estado es responsable en este concepto en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular." (Énfasis suplido.) 31 L.P.R.A. sec. 5142.

Analicemos, pues, en el contexto de los hechos peculiares ante nos, si el agente Rosa Serrano actuó en su "capacidad oficial y dentro del marco de su función, cargo o empleo".

## II

De entrada, es claro que la actuación generadora del daño ha de tener "alguna relación con la gestión encomendada al empleado y no [puede] respond[er] *exclusivamente* a motivos personales de éste". (Énfasis suplido.) *Baralt et al. v. ELA,* 83 D.P.R. 277, 280 (1961). Es preciso, por lo tanto, examinar los deberes y atribuciones de los miembros de la Policía.

El Art. 3 de la Ley de la Policía de Puerto Rico de 1974 —Ley Núm. 26 del 22 de agosto de 1974— dispone:

Se crea en el Estado Libre Asociado de Puerto Rico un organismo civil de orden público que se denominará "Policía de Puerto Rico" y cuya obligación será *proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, prevenir, descubrir y perseguir el delito y, dentro de la esfera de sus atribuciones, compeler obediencia a las leyes y ordenanzas municipales, y reglamentos que conforme a ésta se promulguen.* (Énfasis suplido.) 25 L.P.R.A. sec. 1003.

Más adelante, su Art. 18(g) prescribe:

*Los miembros de la Policía conservarán su condición de tales en* todo momento y en cualquier sitio en que se encontraren *dentro de la jurisdicción del Estado Libre Asociado, aun cuando estuvieren libres.* A esos efectos tendrán todos los deberes y atribuciones que por este Capítulo se imponen a los miembros de la Policía. (Énfasis suplido.) 25 L.P.R.A. sec. 1018.

Estas disposiciones encarnan, en síntesis, la política pública gubernamental relativa a la Policía del país. Ya sea durante un horario regular como fuera del mismo, éstas ininterrumpidamente conservan esa condición. *Ortiz Andújar v. E.L.A.,* 122 D.P.R. 817 (1988). No podría ser de otro modo. Y es que el crimen no tiene horario específico. Para conjurarlo, el Estado le exige al policía que esté siempre armado.

La portación y el uso del arma de fuego están regulados por el Manual sobre Uso y Manejo de Armas de Fuego de la Policía de Puerto Rico, Revisión de 1987, Cap. II F, págs. 4–5. En lo pertinente, dispone:

> 2. Por razones de seguridad, comodidad y conservación el revólver *se llevará siempre en su funda o vaqueta.* No se llevará nunca en el bolsillo del pantalón, ni en la cintura por dentro de la correa sin funda o vaqueta.

> . . . . . . . .

> 5. Los miembros de la Fuerza portarán el arma de reglamento *en todo momento, a[u]n cuando estén fuera de servicio* . . . . (Énfasis suplido.) Anejo I, págs. 8–9.

Apliquemos estas disposiciones a los hechos ante nos.

*Primero,* surge que el agente Rosa Serrano portaba *lícitamente* su revólver por imperativo estatutario y reglamentario. En este extremo actuaba dentro del marco de sus funciones oficiales.

*Segundo,* conforme el propio tribunal de instancia —aunque dicho agente no fue advertido de la presencia de un sospechoso— el agente actuó motivado por el temor de ser reconocido. Esta determinación es crucial y determinante.

■ La obligación de los policías de prevenir el crimen no excluye los actos criminales contra su propia persona o propiedad. *Pueblo v. Caro González,* 110 D.P.R. 518 (1980). Lo contrario resultaría en la anomalía de que el policía tendría el deber de defender las vidas de sus semejantes, pero no la suya. El policía, al igual que los demás ciudadanos, tiene el derecho a convivir con su prójimo en paz, sin que impunemente se cometan en su contra actos delictivos.

■ *Tercero,* la circunstancia de que su actuación fuera *también,* y redundara, en un beneficio personal, no exonera al Estado de responsabilidad. "Si bien sus motivos pudieron ser combinados, *si su actuación en parte cumplió con los fines de su empleo, su negligencia* . . . debe imputarse a su patrono." (Énfasis suplido.) *Lloréns v. Lozada,* 73 D.P.R. 271, 276 (1952). No podemos refrendar el argumento del Estado de que no es

responsable debido a que el temor del agente Rosa Serrano fue consecuencia directa de haberse ubicado voluntariamente —sin serle oficialmente requerido— en un lugar donde era susceptible de ser atacado. Esa conclusión significaría limitarle —*a priori*— a los miembros de la Policía su libertad de movimiento.

Tampoco tiene el Estado razón al argumentar que Rosa Serrano "obró incorrectamente y contrario a la reglamentación específica sobre armas de fuego, por lo que no se justifica que el Estado responda por los daños ocasionados por su actuación ultra vires". Informe Procurador General, pág. 12. Ciertamente esa inobservancia reglamentaria forma parte del cuadro de negligencia. Es obvio que de haber cargado el arma en la funda o vaqueta —tal y como lo dispone el referido manual—(3) no hubiese tenido necesidad de cambiarla.

 No existe controversia en cuanto a que al hacerlo fue negligente. Así lo acepta el Procurador General. Que actuara en una forma expresamente prohibida por su principal no libera de responsabilidad. "Precisamente la existencia de responsabilidad de un patrono, en cuanto al pago de daños y perjuicios en virtud de la actuación de un agente, está predicada en la culpa o negligencia del agente. *Por autodefinición, la culpa o negligencia del agente, creadora de responsabilidad patronal, conlleva una actuación injustificada y contraria a las normas legales . . . .* Naturalmente, bajo determinadas circunstancias, la actuación delictiva, excesiva o innecesaria puede ser un factor relevante en la comprobación de si el agente ha actuado o no dentro de los límites de sus funciones. Pero no es un factor único y exclusivamente decisivo. Si el acto delictivo o el despliegue de violencia excesiva *se lleva a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses perso-*

---

(3) En lo pertinente, el Cap. II F3 dispone:

"En el caso de miembros de la Fuerza que visten ropa de civil y de empleados civiles autorizados a portar arma, *la portarán en su funda o vaqueta, evitando que la misma esté visible.* En el interior de las oficinas se portará siempre el arma en la funda o vaqueta y la misma puede ser visible, pero se tomarán las medidas de seguridad." (Énfasis suplido.) Anejo I, pág. 8.

*nales del agente,* el patrono sería entonces responsable." (Énfasis suplido.) *Rodríguez v. Pueblo,* 75 D.P.R. 401, 409–410 (1953).

Si la actuación negligente de un policía —en violación de sus deberes— fuese suficiente para exonerar al Estado, éste sería virtualmente inmune.[4] En el caso de autos, la conducta de Rosa Serrano, en contravención a los deberes y obligaciones impuestas por ley y reglamento, conlleva responsabilidad. Indirecta pero suficientemente, su conducta estuvo relacionada con la realización del interés mayor del Estado, como patrono de la fuerza policial, en prevenir el crimen.

> Aunque técnicamente fuera de servicio, el [agente] cumplía con una función que le fue específicamente impuesta por la ciudad —portar el arma de reglamento— y la realización de ese requisito, aunque negligente, adelantaba los intereses de su patrono. Concluimos que existe responsabilidad [por la herida causada al dispararse su revólver al caer al pavimento]. Resolver lo contrario impondría a las víctimas inocentes los daños asociados con la reglamentación que impuso en los agentes un arma de fuego a toda hora. Esa reglamentación es para beneficio del público; por ende es razonable que el público, a través del gobierno, asuma la carga monetaria que ello genera en víctimas inocentes. (Traducción nuestra.) *District of Columbia v. Davis,* 386 A.2d 1195, 1204–1205 (1978).

---

[4] El criterio determinante para establecer la responsabilidad del patrono cuando su empleado ha actuado en contravención de sus deberes es "si, al llevarse a cabo tal actuación, o al ocurrir el accidente, el agente tenía el propósito de servir y proteger los intereses de su patrono, y no con la intención de servir los propios propósitos del agente, y si la actuación es incidental al cumplimiento de las actuaciones autorizadas, esto es, *si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono*". (Énfasis suplido.) *González v. Compañía Agrícola,* 76 D.P.R. 398, 401 (1954).

En *Martínez v. Comunidad M. Fajardo,* 90 D.P.R. 461, 466 (1964), al señalar que el hecho de que el empleado estuviese actuando en una forma expresamente prohibida por su patrono no exonera a éste de responsabilidad, sentamos el criterio a tomarse en consideración: "[T]odo se reduce a una determinación sobre la intención que informó la actuación del empleado, pues si al llevarla a cabo tenía el propósito de servir y proteger los intereses del patrono y no los suyos propios, se le impondrá responsabilidad al patrono."

## III

■ Aclaramos no obstante, que el deber reglamentario de portar su arma en todo momento, por sí solo, no es suficiente para imponerle responsabilidad al Estado en toda situación imaginable. La Ley de Reclamaciones y Demandas contra el Estado no visualiza esa responsabilidad absoluta. *E.L.A. v. Tribunal Superior,* 98 D.P.R. 524, 531 (1970). Habrá responsabilidad si se establece suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado por razón del ejercicio de funciones expresas o implícitas.

El criterio decisorio no es si el policía estaba en sus horas de trabajo o franco de servicio, como tampoco el hecho de que la ley disponga que los policías conservan esa condición en todo momento. "[E]n este campo del derecho, las diferencias en los conceptos pueden ser sutiles y de difícil aplicación en la práctica. Se trata más bien de una cuestión de grado, cuya solución depende de distintos factores, tales como la gravedad de la actuación, los móviles del agente, la ocasión inmediata de la actuación y la naturaleza de la conexión entre el hecho ilícito y la encomienda del agente." *Rodríguez v. Pueblo,* supra, págs. 410–411.

*Se dictará sentencia a los fines de imponer también responsabilidad al Estado Libre Asociado.*

El Juez Asociado Señor Hernández Denton emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Examinada la transcripción de la evidencia de la vista en su fondo en el caso de epígrafe, y convencidos de que el Tribunal Superior realizó una correcta apreciación de la prueba, disentimos de la opinión del Tribunal. En ausencia de pasión, prejuicio,

parcialidad o error manifiesto, tanto al evaluar como al aquilatar la prueba presentada ante el tribunal a quo, procedía que confirmáramos su dictamen el cual desestimó la demanda. *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985).

Surge de la transcripción que hubo dos (2) versiones conflictivas y que, después de dirimir credibilidad, el Tribunal Superior creyó la versión expuesta por el demandante. En sus determinaciones, el foro de instancia expresamente concluyó que no le mereció credibilidad alguna el testimonio prestado por el agente Rosa Serrano y que éste decidió sacar el revólver de una bolsa para colocarlo en la cintura. Sentencia, pág. 5. Evaluados los testimonios tanto de la parte demandante como del policía, el tribunal concluyó que la negligencia del agente Rosa no era imputable al Estado porque, cuando ocurrieron los hechos, el policía no estaba actuando en beneficio del Estado:

> En el caso ante nos, el policía Rosa Serrano no estaba realizando gestiones en beneficio de su patrono. El estaba actuando a base de un móvil puramente personal. No hubo prueba, que mereciera nuestra credibilidad, para concluir que el agente entendía [que] estaba protegiendo los intereses sociales de la comunidad. Tampoco hubo la más mínima prueba de que hubiese surgido algún problema que justificase la intervención del señor Rosa Serrano en su carácter .de oficial de la policía. Bajo estas circunstancias no podemos imponer responsabilidad al Estado Libre Asociado, mucho más aún, cuando no se ha traído prueba alguna sobre negligencia de éste como patrono, al faltar a un deber de adiestramiento o vigilancia de los empleados. Sentencia, pág. 7.

La transcripción de la prueba lo que realmente revela es que el día de los sucesos el agente Rosa Serrano terminó su turno de trabajo a las 8:00 de la noche y se fue con unos amigos a jugar dominó. Alrededor de la medianoche se fueron a comer al restaurante "La Tasqueña". Allí se sentaron en una mesa y conversaron. Mientras estuvo en el lugar, el único incidente que ocurrió fue el disparo accidental de su revólver. El foro de instancia no le creyó respecto a que había un sospechoso en el lugar. De la transcripción no se desprende que hubiese ningún

motivo fundado para que el agente tuviese que hacer uso de su arma de fuego o que él expresa o implícitamente estuviera en funciones de su trabajo. Su presencia en el lugar no era con propósitos investigativos y en ningún momento tuvo que intervenir para evitar la comisión de un acto delictivo.

De hecho, de la transcripción no se desprende que al ocurrir el accidente el agente se identificara y auxiliara al herido. Todo lo contrario, esperó unos momentos, recogió el arma de fuego y, para evitar problemas, se fue del lugar. Véase T.E., pág. 14. No podemos refrendar la tesis de la opinión del Tribunal, pág. 506, de que en este caso se estableció "suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado por razón del ejercicio de funciones expresas o implícitas".

En ausencia de una explicación adecuadamente fundamentada de cuáles son "las funciones expresas o implícitas" que en este caso establecen el nexo jurídico entre la actuación del agente y los intereses del Estado, nos preocupa que el efecto real de esta decisión sea imponerle al Estado responsabilidad absoluta en todas las situaciones en que un policía utilice su arma de reglamento. La opinión mayoritaria adolece de criterios que faciliten la adjudicación de las múltiples situaciones en que un policía, fuera de su horario de trabajo, pueda utilizar negligentemente su arma de reglamento. Por último, al no definir las funciones "expresas o implícitas" que activan la norma, la decisión no establece unas directrices que le permitan al Estado elaborar una nueva reglamentación sobre el uso apropiado del arma de reglamento a la luz de la normativa adoptada por este Tribunal.

Por las razones expuestas anteriormente, disentimos.