# 2006 DTA 125

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE AGUADILLA**
**PANEL VIII – SUSTITUTO**

ALICEA ACEVEDO, ALBERTO ACEVEDO AGRONT Y AMBOS EN REPRESENTACIÓN DE SU HIJO
MENOR, ALBERTO ACEVEDO ACEVEDO
Demandantes-Apelantes

v.

AGTE. JORGE L. SOTO CORTÉS, AGTE. EDGARDO MARTÍNEZ MUÑOZ
EN SU CARÁCTER PERSONAL Y OFICIAL COMO AGENTES DE LA DIVISIÓN
DE DROGAS Y VICIOS DE AGUADILLA; LIC. PEDRO TOLEDO DÁVILA,
EN REPRESENTACIÓN DEL DEPARTAMENTO DE LA POLICÍA DE PUERTO RICO; ANGIE VARELA
LLAVONA, EN REPRESENTACIÓN DEL DEPARTAMENTO
DE LA FAMILIA; LIC. ÁNGEL ROTGER SABAT, EN REPRESENTACIÓN
DEL ESTADO LIBRE ASOCIADO DE P.R.
Demandados-Apelados

Núm. KLAN-2006-00287

San Juan, Puerto Rico, a 13 de octubre de 2006

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Varona Méndez y el Juez Hernández Serrano

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 20 de septiembre de 2000, la Sra. Alicea Acevedo, el Sr. Alberto Acevedo, ambos en representación de su hijo, el menor Alberto Acevedo Acevedo, presentaron una demanda en reclamo de daños y perjuicios y violación de derechos constitucionales contra el Agente Jorge L. Soto Cortés y el Agente Edgardo Martínez Muñoz, ambos en su carácter personal y oficial como agentes de la División de Drogas y Vicios de Aguadilla. Incluyeron además, como demandados, a la Policía de Puerto Rico, al Departamento de la Familia y al Estado Libre Asociado de Puerto Rico. Reclamaron el pago de $350,000.00 por los daños sufridos cuando los agentes antes mencionados intervinieron con el menor y la madre.

Mientras se llevaba a cabo el juicio en su fondo se suscitó una controversia en cuanto a un documento presentado como prueba de refutación por los entonces demandados, titulado "*Advertencias*", el cual alegadamente había sido firmado por la Sra. Acevedo. Las partes acordaron que se designara un examinador de documentos dudosos como perito del tribunal para que se dispusiera de la controversia en cuanto a la autenticidad de la firma que aparecía en el documento. Una vez el perito rindió el informe y testificó en el juicio, el foro primario encontró contradicciones en su testimonio por lo que no le mereció credibilidad y lo descartó. Determinó además, en cuanto a lo reclamado en la demanda, que la intervención de los agentes había sido conforme a derecho, por lo que la declaró sin lugar.

Por entender que erró el tribunal sentenciador al así proceder, recurren los demandantes ante nos mediante

recurso de apelación. Señalan, en síntesis, que erró el foro de primera instancia al no darle credibilidad al testimonio del perito del tribunal y al determinar que actuaron correctamente los agentes de la Policía de Puerto Rico en su intervención con el menor y la madre, por lo que no concedió los daños reclamados en la demanda.

Por los fundamentos que discutiremos a continuación, confirmamos la sentencia recurrida.

## I

El 22 de octubre de 1999, los agentes Edgardo Martínez Muñoz y María de los Ángeles Arocho intervinieron con la señora Alicea Acevedo Agosto y el hijo de ésta, el menor Alberto Acevedo Acevedo. [1] La intervención se dio luego de unas observaciones que hiciera el agente Jorge L. Soto Cortés que, de acuerdo a su experiencia, se trataba de transacciones de drogas tipo "servi-carro". De esta intervención -hecho que no estuvo en controversia-, resultó arrestado el menor. Respecto a si la madre resultó arrestada o no, es una de las controversias ante nuestra consideración. Según la versión ofrecida por la Sra. Acevedo Agosto, a ella nunca le leyeron las advertencias legales como sospechosa de delito y en dicho incidente lo que le pidieron fue que acompañara a su hijo. Es decir, según su testimonio, ella no estaba arrestada y no la esposaron. Por su parte, la agente Arocho testificó que ella arrestó a ambos, madre e hijo, le leyó las advertencias a ambos y que había esposado a la madre. Asimismo declaró que, estando en la División de Drogas, se le volvieron a hacer las advertencias y se le hizo firmar un documento titulado "Advertencias".

Tras la intervención se iniciaron sendos procedimientos judiciales en contra de la Sra. Acevedo, su hijo y los demás intervenidos, por violaciones a la Ley de Sustancias Controladas. Específicamente, en cuanto a la Sra. Acevedo, se radicaron cargos por violación al Art. 411 ▇ de la Ley de Sustancias Controladas. Por dicho cargo, la jueza Rosalinda Ruiz Ruperto no encontró causa probable para arresto, por lo que el fiscal a cargo del caso procedió a enmendar la denuncia e imputó violación al Art. 401 ▇ de la misma ley, por el que sí se determinó causa.

Asimismo, y por estos hechos, el Departamento de la Familia inició el procedimiento de protección de menores ante la Sala de Relaciones de Familia en Aguadilla. Como resultado de este procedimiento, los menores fueron removidos del hogar de los apelantes por ocho (8) meses, desde el 5 de noviembre de 1999 hasta el 8 de julio de 2000. Durante este período de tiempo a la pareja sólo se le estaba permitido relacionarse con sus hijos a razón de una hora por mes en las instalaciones del Departamento de la Familia.

El 29 de marzo de 2000, tras celebrarse vista, el juez determinó no causa contra el menor. De igual forma, el 21 de junio de 2000, tras celebrarse vista preliminar en contra de la Sra. Acevedo, el juez no encontró causa probable para acusar.

Por estos hechos, el 28 de septiembre de 2000, la Sra. Acevedo, el señor Acevedo, por sí y en representación del menor Alberto Acevedo Acevedo, presentaron una demanda ante el Tribunal de Primera Instancia, Sala de Aguadilla, en contra de los agentes Jorge L. Soto Cortés y Edgardo Martínez Muñoz, ambos en su carácter personal y oficial como agentes de la División de Drogas y Vicios de Aguadilla. Incluyeron además, como demandados, a la Policía de Puerto Rico, al Departamento de la Familia y al Estado Libre Asociado de Puerto Rico. Reclamaron las siguientes cuantías: $200,000.00 por las angustias sufridas por la Sra. Alicea Acevedo.

Luego de los incidentes procesales de rigor, el 13 de mayo de 2004 comenzó el juicio en su fondo. En aquella ocasión, testificaron por la parte demandante, el Sr. y la Sra. Acevedo y el Dr. José Zamora Álvarez. La parte demandada presentó los testimonios de los agentes María de los Ángeles Arocho y Jorge Luis Soto Cortés. Mientras el Lcdo. Morales Arocho, abogado de los demandados, llevaba a cabo su contrainterrogatorio a la Sra. Acevedo, le mostró un documento titulado "Advertencias que deberán hacerse a un sospechoso y/o acusado", alegadamente firmado por ella, con la intención de refutar o impugnar el testimonio ofrecido, en el

sentido de que nunca le habían hecho las advertencias ni había firmado ningún documento. En el mencionado documento, de 22 de octubre de 1999, surgía lo que se alegaba era su firma y la firma de la agente María de los Ángeles Arocho, en calidad de agente interventor.

Acto seguido, la Sra. Acevedo aseguró, bajo juramento, que aquella no era su firma y que la noche de la intervención ella no había firmado nada. Tras una discusión en cuanto a la autenticidad del documento, el abogado de los demandantes, objetó la admisión del documento hasta que no se trajera un perito calígrafo.

Al finalizar la vista, la jueza que presidía los procedimientos pidió que se contratara un perito para que inspeccionara el documento. El abogado de los demandantes proveyó copia de unas identificaciones de la Sra. Acevedo, entre las que se incluyeron las licencias de conducir emitidas por el Estado Libre Asociado de Puerto Rico y por el estado de Connecticut y una identificación del estado de Connecticut. Asimismo, se proveyó copia del documento en controversia. La jueza sugirió dos nombres de peritos para que las partes los investigaran y seleccionaran uno que fungiría como perito del tribunal. De acuerdo con lo anterior, el 18 de mayo de 2004, el foro apelado dictó una orden sometiéndole a las partes los nombres de los peritos calígrafos para su consideración. Incluyó los nombres de Evaristo Álvarez Ghillioti y Héctor Delgado Rodríguez.

El 15 de julio de 2004, la parte demandante presentó una *"Moción en cumplimiento de orden"* en la que expuso que se había establecido contacto con el perito calígrafo Héctor Delgado Rodríguez y que le habían enviado copia de las identificaciones de la Sra. Acevedo y del documento en controversia. El Sr. Delgado Rodríguez emitió el informe pericial el 9 de septiembre de 2004, en el cual concluyó lo siguiente:

*"En la valorización comparativa de los elementos gráficos escriptorios de la escritura en la firma del documento dubitado titulado "Advertencias", éstos no guardan relación respecto al escritor, de las tarjetas de identificaciones o licencias del escritor de nombre Alicea Acevedo."* Énfasis en el original.

Además incluyó la siguiente nota:

*"Nota: Mediante la cantidad de muestras de escritura sometidas, no podemos responsablemente establecer que ese es el universo de escritura en firma y que no hay otras tipificaciones.*

*Se le debe tomar muestras de firmas al agente interventor, ya que se observan trazos de salida finales, en el mismo nivel de destreza de algunos elementos gráficos de la firma en controversia."*

El 4 de octubre de 2004, el Estado Libre Asociado presentó *"Moción objetando informe [del] perito"* a los fines de que no se considerara el informe por no ser concluyente. Luego de que las partes presentaran algunas mociones referentes al perito y otros incidentes procesales, se celebró vista el 6 de abril de 2005, con el fin de disponer de la controversia generada en torno al informe pericial rendido.

Durante la vista, tanto la jueza que presidió la vista, como las partes, tuvieron oportunidad de interrogar al Sr. Delgado Rodríguez, quien, en síntesis, declaró sobre el método utilizado en su informe y el porqué de su conclusión. Además, aclaró las dudas surgidas en cuanto a la nota que incluyó en el informe y se reafirmó en su conclusión de que no existían rasgos de comparación entre las firmas de la Sra. Acevedo en sus tres identificaciones y la firma en el documento en controversia.

Finalmente, el Tribunal de Primera Instancia dictó sentencia el 20 de diciembre de 2005, notificada el 12 de enero de 2006, mediante la cual desestimó la demanda presentada. Determinó que los agentes actuaban en funciones y gestiones de su patrono, la Policía de Puerto Rico, y que tuvieron motivos fundados para intervenir con la Sra. Acevedo y el menor. De igual forma, descartó el testimonio del perito por entender que éste se había contradicho en relación a lo que había expresado en el informe pericial. Además, concluyó que, aun si

determinara que la Sra. Acevedo no había firmado el documento de *"Advertencias"*, no podía conceder una cuantía en daños a favor de los demandantes, aquí apelantes, porque se trataba de daños abstractos o incuantificables que nuestro sistema de derecho no admite.

De la anterior determinación recurre ante nos el señor y la señora Acevedo, mediante recurso de apelación oportunamente presentado. Antes de comenzar la discusión de los errores alegados, conviene delimitar brevemente el trasfondo normativo aplicable al caso ante nos.

## II

### A

Como se sabe, nuestra Constitución prohíbe que, de ordinario, se pueda arrestar a alguna persona sin previa orden judicial fundada en una determinación de causa probable. ■ *Pueblo v. Martínez Torres*, 120 D.P.R. 496 (1988). De este modo, se protege la dignidad de las personas, y se interpone la figura imparcial del Juez entre los funcionarios públicos y la ciudadanía para ofrecer una mayor garantía de razonabilidad a la intrusión estatal. *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984).

La protección que ofrece la Constitución contra el arresto irrazonable es tal que si un arresto se realiza sin orden judicial, éste se presume inválido, y compete al Ministerio Público rebatir la presunción de irrazonabilidad mediante la presentación de prueba sobre las circunstancias especiales que requirieron tal intervención por los agentes del orden público. *Pueblo v. Rivera Colón*, 128 D.P.R. 672, 681 (1991).

Claro está, el requerimiento constitucional de que la orden de arresto sea expedida por autoridad judicial no es absoluto. En la propia Asamblea Constituyente se reconoció expresamente que la garantía aludida frente al arresto tiene su límite en la conducta criminal. 4 Diario de Sesiones de la Asamblea Constituyente 2567-2568 (1951). Así, se ha reconocido que un agente del orden público puede realizar un arresto sin previa orden judicial cuando, como dispone la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, dicho agente tiene *"motivos fundados"* para creer que la persona arrestada ha cometido un delito grave o ha cometido un delito en su presencia. *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244 (1988); *Pueblo v. Rivera Rivera*, 117 D.P.R. 283 (1986). Se trata de *"situaciones excepcionales"*, que se han *"definido estrechamente"*, en las cuales la orden judicial no es indispensable. *Pueblo v. Rivera Colón, supra*, a la pág. 682.

En numerosos pronunciamientos anteriores, el Tribunal Supremo de Puerto Rico ha definido en qué consisten esos *"motivos fundados"*, que por excepción permiten el arresto sin orden judicial. En esencia, se ha resuelto que tales motivos fundados existen si se desprende de la totalidad de las circunstancias del caso en cuestión que una persona ordinaria y prudente poseería aquella información y conocimiento que la llevarían a creer que la persona arrestada ha cometido o va a cometer el delito en cuestión. *Pueblo v. Ortiz Alvarado*, 135 D.P.R. 41 (1994); *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991).

Por lo que para que existan motivos fundados para realizar un arresto sin orden judicial, deben existir circunstancias excepcionales que lo justifiquen. El agente del orden público que realiza tal arresto debe conocer o estar informado de hechos concretos que razonablemente apunten a la comisión de un delito. Meras sospechas no bastan. *Pueblo v. Ortiz Alvarado, supra*. Tales motivos fundados existen claramente cuando el agente del orden público personalmente observa una actuación que es delictiva. También existen tales motivos fundados, aunque el agente no haya presenciado la comisión del delito, si al evaluar todos los datos que éste posee sobre el asunto, incluyendo lo que el agente mismo haya observado, éste concluye razonablemente que lo más probable es que se ha cometido o se va a cometer un delito.

## B

La facultad de un tribunal de designar y nombrar un perito judicial es una autoridad consustancial e inherente a su deber de simplificar la adjudicación de controversias en forma justa, rápida y económica. *Meléndez v. Levitt & Sons,* 104 D.P.R. 797 (1976). La designación de peritos nombrados por el Tribunal intenta evitar o eliminar la situación indeseable de que los peritos actúen o se conviertan en testigos particulares de las partes, provocando que su comparecencia y testimonio ante el tribunal no cuente con el endoso previo de los demás litigantes. *San Lorenzo Trad., Inc. v. Hernández,* 114 D.P.R. 704 (1983); *Urrutia v. A.A.A.,* 103 D.P.R. 643, 650 (1975); *Toppel v. Toppel,* 114 D.P.R. 16 (1983).

La validez intrínseca de que el testimonio del perito sea, en lo posible, la expresión sincera, desinteresada e imparcial de un profesional competente, se encuentra en franco cuestionamiento por todo conocedor del proceso judicial. Más bien, prevalece la percepción, muchas veces correcta, de que se trata de profesionales rivales, cuyas respectivas comparecencias y opiniones, de ordinario, se orientan conforme al interés exclusivo de la parte que los contrata. *Meléndez v. Levitt & Sons, supra.* Las reglas aplicables y la doctrina sobre el rol del perito cristalizan una postura ecléctica: consagran la pericia como medio de prueba, pero a la vez se les adscribe una gestión auxiliadora para el juez. *San Lorenzo Trading Inc. v. Hernández Barreras, supra.*

La Regla 59 de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV, R. 59, regula lo relacionado con el nombramiento de peritos por el Tribunal.

(A) *Nombramiento.*--Antes del comienzo del juicio o durante el transcurso de éste, cuando el tribunal determine que es necesaria prueba pericial, podrá de su propia iniciativa, o a solicitud de parte, nombrar uno o más peritos para que investiguen y sometan un informe según lo ordene el tribunal, o para que declaren en calidad pericial en el juicio. El tribunal determinará la compensación por los servicios del perito.

(B) *Compensación.*--En toda acción criminal o procedimiento de menores, la compensación será pagada con fondos del Estado. En todas las demás acciones civiles, la compensación será pagada por las partes envueltas en el litigio en la proporción que el tribunal determine, sujeto a que luego sea impuesta como otras costas o desembolsos conforme a derecho.

(C) *Presentación e interrogatorio.*--Cualquier perito nombrado por el tribunal conforme a esta regla podrá ser llamado a declarar y ser interrogado por el tribunal o por cualquier parte. Cuando sea llamado e interrogado por el tribunal, las partes tendrán el mismo derecho a contrainterrogar como si se tratare de cualquier otro testigo.

(D) *Derecho a presentar otra evidencia pericial.*--Esta regla no impedirá que cualquier parte presente evidencia pericial adicional sobre el mismo hecho o asunto sobre el que declara o informa el perito nombrado por el tribunal. Si la parte presenta su propio perito, pagará sus honorarios sin que dicho pago sea recobrable como costas, a menos que el tribunal discrecionalmente disponga lo contrario.

## C

Establece el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, que:

*"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."*

De conformidad con la referida disposición estatutaria, la reparación de un daño causado procede, siempre y cuando se demuestren varios elementos indispensables, sin los cuales no se configura causa de acción alguna que pueda ser reconocida bajo la doctrina de la responsabilidad civil extracontractual. Es norma harto conocida

que el demandante, en una causa de acción por daños y perjuicios extracontractuales, tiene que probar: a) la existencia de una acción u omisión productora del acto ilícito extracontractual; b) la antijuricidad de la misma; c) la culpa o negligencia del agente; d) producción de un daño; y e) relación de causa o efecto entre la acción u omisión y el daño. ■

De otra parte, el Artículo 1803, 31 L.P.R.A. sec. 5142, dispone, en lo aquí pertinente, que la obligación que impone el Artículo 1802, *ante*, es exigible, *no sólo* por los actos u omisiones propios, *sino que* por los de aquellas personas de quienes se debe responder; ello, si existe un nexo jurídico previo entre el causante del daño y el que viene obligado a repararlo. *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497 (1991). *Así, entre otros, es responsable el Estado por los perjuicios causados por sus empleados en ocasión de sus funciones, siendo responsable, además, en ese concepto, en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular.* Artículo 1803, *ante*. De esa manera, se reconoce la responsabilidad del Estado a base de la doctrina de la responsabilidad vicaria. Señala la propia disposición de ley que la responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. ■

El Artículo 2(a) de la referida Ley, específicamente dispone, en lo pertinente, que el Estado Libre Asociado de Puerto Rico podrá ser demandado ante el Tribunal de Primera Instancia en acciones por daños y perjuicios ocasionados a la persona o a la propiedad, causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo, interviniendo culpa o negligencia. 32 L.P.R.A. sec. 3077 (a). Por otra parte debe mantenerse presente que, aun cuando el Estado haya renunciado a su inmunidad en casos de negligencia, éste conserva dicha inmunidad cuando la actuación del agente o funcionario constituye delito.

De conformidad con ello, para que la persona que reclama responsabilidad al Estado pueda prevalecer en un pleito en daños y perjuicios en contra de este último, ya sea por las acciones afirmativas o por las omisiones de un empleado, agente o funcionario, *es necesaria la concurrencia de ciertos elementos*. Véase: *Leyva v. Aristud, ante*. En primer lugar, la persona del demandante tiene el deber de probar que aquél que le causó el daño, era agente, funcionario o empleado del Estado; añadido al hecho de que tal agente, funcionario o empleado, estuviese actuando en su capacidad oficial al momento de causarle el mismo. En segundo término, tiene que establecer un nexo jurídico suficiente entre la actuación negligente del alegado responsable y los intereses del Estado, esto por razón del ejercicio de funciones expresas o implícitas. *Id.*; *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497, 506 (1991). Es menester que pruebe, además, que el agente, empleado o funcionario, actuó dentro del marco de su función. Por último, el demandante tiene que establecer que la actuación de aquél fue negligente y no intencional, y la existencia de un nexo o relación causal entre la conducta culposa y el daño producido. Véase Artículo 6 (d) de la Ley Núm. 104, *ante*, 32 L.P.R.A. sec. 3081 (d).

En cuanto a los daños, el Tribunal Supremo ha señalado, en términos generales, que "*daño*" es todo aquel menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, ya en su propiedad o patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra." *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1, 7 (1994). ■

**D**

Por último, debemos reafirmar la norma que dispone que al evaluar las determinaciones de hechos que un tribunal hiciere, fundamentadas en la prueba pericial y documental ofrecida, un tribunal apelativo está en igual posición de evaluarlas y hacer sus propias conclusiones. ■ No obstante, si.las determinaciones están basadas en prueba testifical no pericial vertida en juicio, se impone la doctrina de deferencia. La anterior doctrina exige que un tribunal apelativo no intervenga con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos a nivel de primera instancia, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. ■ El foro primario es quien está en

mejor posición de aquilatar la prueba testifical, toda vez que tuvo la oportunidad de escuchar y ver declarar a los testigos.

Luego de haber examinado los escritos sometidos por las partes, las determinaciones de hechos y conclusiones de derecho, la transcripción oficial de la prueba (T.O.), el informe pericial y el derecho vigente, pasamos a resolver.

## III

Comenzaremos por dilucidar la controversia que gira en torno a la prueba pericial presentada, pues es crucial para la resolución del presente caso. Señalan los apelantes como error que el foro primario descartara el testimonio del perito por resultar contradictorio en comparación con lo que había expresado en el informe por él rendido. El error fue cometido. Veamos.

En su sentencia, el foro sentenciador indicó:

*"En el caso ante nos, sin embargo, la co-demandante Alicea Acevedo alega que no le leyeron las advertencias y niega que haya firmado el documento titulado "Advertencias". Por su parte, el demandado dice que ese documento lo firmó ella frente a ellos. El examinador de documentos dudosos, Sr. Héctor Delgado Rodríguez, en su informe del 9 de septiembre de 2004, expresa que no podía razonablemente establecer que ese fuera el universo de escritura en firma y que no hay otras tipificaciones, mediante la cantidad de muestras de escritura sometidas.*

*En consecuencia, este Tribunal descarta el informe rendido por el perito Sr. Héctor Delgado Rodríguez y descarta el testimonio de éste durante el juicio, por ser claramente contradictorios. A preguntas específicas de esta juez, el perito expresó que la co-demandante no había firmado el documento titulado "Advertencias", que la firma que aparecía allí no era la de la codemandada Sra. Alicea Acevedo, a pesar de que el informe del 9 de septiembre de 2004 no fue enmendado o suplementado."*

Al evaluar tanto el informe pericial como la transcripción de la vista, no encontramos tal contradicción. En primer lugar, la conclusión del informe pericial es clara y contundente. Expresa el informe, a la página 8, que *"los elementos gráficos escriptorios de la escritura en la firma del documento dubitado titulado "Advertencias", éstos no guardan relación con respecto al [...] escritor de nombre Alicea Acevedo".* El testimonio del perito en sala fue igualmente claro y contundente al expresar que no encontró ningún elemento de comparación entre las tres (3) tarjetas de identificación de la Sra. Acevedo y la firma del documento en controversia. █ Igualmente se reafirmó en que no había duda de que las firmas que aparecían en las identificaciones de la Sra. Acevedo habían sido hechas por la misma persona. █

Según expresado en la sentencia, la contradicción estriba en la nota que incluyó el perito al final del informe. Aunque ya la habíamos incluido anteriormente en nuestra sentencia, creemos necesario incluirla nuevamente.

*"Nota: Mediante la cantidad de muestras de escritura sometidas, no podemos responsablemente establecer que ese es el universo de escritura en firma y que no hay otras tipificaciones."*

Como vemos, la nota se limita a establecer el ámbito de los hallazgos hechos por el perito. A éste se le proveyeron tres (3) muestras, con las que estuvieron de acuerdo las partes porque entendían que eran representativas de la escritura de la Sra. Acevedo. En cuanto a esto, el Sr. Delgado Rodríguez, a preguntas de la jueza, explicó durante su testimonio que es mejor realizar la evaluación mientras más muestras de escritura tiene el perito, pero al momento de evaluarlas va a depender de los elementos de comparación. Más adelante manifiesta que puede tener cien (100) muestras y ninguna compare con el documento en controversia y que de

esas cien (100) escoja tres (3) que sean representativas y que de igual forma ninguna tenga elementos comparativos. ██

Ahora bien, el perito hace una declaración muy importante para el presente caso en cuanto a la espontaneidad de las firmas. Expresó que dada la espontaneidad de las muestras, a saber, las tres identificaciones, y del momento que se efectúo la supuesta firma, era razonable confiar en que las tres muestras eran suficientes para llevar a cabo el informe. Por otro lado, resulta sorpresiva la conclusión de descartar por completo el informe pericial y el testimonio del perito, cuando en sala la propia juez que presidió los procedimientos expresó que ella no encontró ningún rasgo que pudiera ser comparativo entre las muestras de firma de la apelante y la firma en el documento evaluado ██ titulado "*Advertencias*".

Si bien es cierto que un tribunal no tiene que acatar la opinión de un perito o facultativo por ser un perito del tribunal, no encontramos en el presente caso ninguna razón de peso por la cual el foro apelado no diera credibilidad al testimonio del Sr. Delgado Rodríguez y peso probatorio a su informe.

Concluimos que el tribunal apelado erró al descartar el testimonio e informe pericial rendido por el perito por ser contradictorios.

Señalan también los apelantes que erró el foro sentenciador al resolver que fue correcto el procedimiento seguido por los agentes que intervinieron con la Sra. Acevedo y su hijo menor de edad, por lo que no hubo violación de los derechos civiles de los apelantes. Arguyen que el Departamento de la Policía actuó de forma negligente en su carácter de supervisor de los agentes, al permitirle tales actuaciones contrarias a la ley. Además, alegan que los agentes son responsables en su carácter personal y oficial.

En su determinación, el foro primario dio credibilidad a los testimonios de los agentes en cuanto a la existencia de motivos fundados para intervenir con la apelante y su hijo; además, concluyó que la actuación de éstos no fue negligente ni intencional, por lo que no hubo relación causal.

La doctrina de deferencia a la apreciación de la prueba hecha por el foro primario nos impide intervenir con las determinaciones de hechos o con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Procederemos a revisar los testimonios teniendo presente que es el foro primario quien está en mejor posición de aquilatar la prueba testifical, toda vez que tuvo la oportunidad de escuchar y ver declarar a los testigos. Veamos.

La agente María de los Ángeles Arocho ██ declaró que el día de los hechos se encontraba junto a otros agentes, llevando a cabo una vigilancia con transferencia de motivos, en la que el agente Jorge Soto iba a prestar la vigilancia. A eso de las 9:00 p.m., aproximadamente, el agente Soto les comunica, mediante el radio portátil, que había observado una transacción de drogas y les describió las personas involucradas. Entre éstas, había una mujer de tez trigueña, con cabello recogido en un moño y que vestía un mahón corto de color azul y blusa a cuadros. Junto a esta señora se encontraba un menor de edad que vestía un pantalón crema y dos (2) camisas de color blanco. El sargento José Acevedo Méndez, supervisor de los agentes, le imparte instrucciones para que intervengan. Una vez frente al negocio Valle Liquor Store, el agente Soto les indica que las personas que estaban frente a ella, o sea, la mujer y el menor previamente descritos, eran las personas involucradas en la transacción. La agente procede a bajarse del automóvil, se identifica como policía y los pone bajo arresto. Indica que les lee las advertencias, los dirige al vehículo y los transporta a la División de Drogas en la Base Ramey. ██ Una vez en la base, el agente Soto identifica a las personas como las que estaban implicadas en la transacción, donde se le hacen nuevamente las advertencias de ley. Esta vez se le entregó un documento que contenía las advertencias, que la Sra. Acevedo firmó. ██

Por su parte, la Sra. Acevedo ██ relató que a las 7:00 de la noche del 22 de octubre de 1999, salió para la

casa de su madre ■ en la Comunidad Estela para llevarlos a la iglesia. Ella residía en el Sector Los Caobos, carretera 115, Km. 11.6. Ese día su madre iría a un velorio y ella llevaría a sus hijos a los estudios bíblicos. Alberto, el hijo que resultó arrestado, no iría a la iglesia porque se sentía mal. La Sra. Acevedo sale de la casa de su madre junto a ésta y una tía hacia el velorio. En el camino ve un automóvil estacionado en el área circundante, otro más adelante, frente al parque y muchas patrullas. Deciden regresar, pues ella había dejado a su niño y tenía un mal presentimiento. Ella junto a su esposo se van para la casa de su tía y el menor se queda con la familia afuera de la casa, en la acera de la calle. Alberto, su esposo, comienza a gritarle que al niño lo habían arrestado. El agente le dice que tenía un vídeo del menor vendiendo drogas. Luego, la agente Arocho le pide que se tranquilizara y que la acompañara porque ella no estaba arrestada, pero tenía que acompañar al menor. Relató, distinto a lo testificado por la agente Arocho, que ella no estaba esposada, que llegó a la Base Ramey sin esposas y que no le leyeron sus derechos ni al menor.

Una vez en la División de Drogas, le dijeron que tenía que presentarse con el menor el 26 de octubre a las 8:00 de la mañana en el sótano del Tribunal de Aguadilla y no le dieron una citación oficial. Ella asiste al Tribunal y el licenciado que ella había contratado para que viera el caso del menor le expresa que contra ella también se habían sometido cargos. Ese día, el tribunal encuentra causa para arresto por el Artículo 401 y desisten en cuanto al 411 de la Ley de Sustancias Controladas, *supra*.

En cuanto a cómo sucedieron los hechos que dieron lugar a la causa de acción en el presente caso, también testificó el agente Jorge Luis Soto Cortés. Relató que en la tarde del 22 de octubre de 1999, discutió el plan de trabajo con el Sargento José Alfredo Méndez en conjunto con los Sargentos William Hernández Badillo y Miguel Pujals que consistía en prestar vigilancia a un reconocido punto de drogas tipo servi-carro que operaba en la Calle 5 de la Comunidad Estela de Rincón. Se tomaría la mencionada acción, dadas las querellas que se habían recibido e investigado.

Declara que había recibido instrucciones de otros agentes que vivían en la Comunidad Estela sobre cómo llegar al lugar porque él nunca había estado en esa área. Narró que se ubicó al cruzar la calle de lo que denominó Valle Liquor Store. Como a las 7:00 de la noche, mientras prestaba vigilancia a la residencia en cuestión, observó a un joven caminar hacia la misma. ■ Luego sale de la residencia un menor ■ y a los minutos una mujer. ■ Los tres (3) estaban dialogando y observa que hubo una transacción con una *"pick up"* Ford de color oscuro, que realizó Jeffrey. El Agente Soto transfirió la información, pero los agentes no dieron con el vehículo.

El agente describe dos (2) transacciones más, una que involucraba a un hombre que pasó caminando y la otra un automóvil Lumina blanco, pero de igual forma, los agentes ■ a quienes le transfirió la información no dieron con esta personas. Dada esta situación, el sargento a cargo del operativo lo instruye a que avisara cuando se efectuara otra transacción, para proceder a intervenir. El agente observa otra transacción a las 8:55pm cuando llega una grúa blanca manejada por un hombre a la cual se le acercan las personas descritas, el hombre le entrega un dinero al menor. Éste se aleja, llega hasta donde está la señora y le entrega el dinero. La señora se dobla y saca una bolsa de estraza donde deposita el dinero y saca unas bolsitas transparentes con contenido blanco y se las entrega a Jeffrey. Éste le entrega las bolsitas al pasajero de la grúa. Toda esta situación el agente la está informando a sus compañeros, quienes le indican que intervendrían.

Cuando llegan los agentes, la señora toma la bolsa de estraza y sale corriendo para la casa y la pierde de vista, mientras el menor se queda afuera. Los agentes intervienen y María Arocho se encarga del menor y la madre, poniéndolos bajo arresto. Menciona que ve cuando los esposan a todos, incluyendo a Alicea Acevedo. Los demás agentes intervienen con los otros que resultaron acusados, arrestándolos. Una vez terminó la intervención, él encendió su carro y se dirigió a la División de Drogas. Allí vio a los arrestados y en su presencia la agente Arocho le lee las advertencias y vio cuando la Sra. Acevedo firmó el documento de Advertencias. Luego de que consultó la situación con el fiscal de turno, los cita a todos para el 26 de octubre.

Desfilada dicha prueba, la representación del abogado de la Sra. Alicea Acevedo solicitó nuevamente presentar a la Sra. Acevedo a declarar y ésta declaró que el Lumina blanco, en el que había salido de la casa, era de su tía.

Como mencionáramos previamente, en el presente caso al Tribunal de Primera Instancia le merecieron más credibilidad los testimonios de los testigos de la parte demandada, aquí apelada. Ahora bien, una de las controversias principales en el presente caso lo es si la Sra. Acevedo firmó o no el documento de *"advertencias"*. Según concluimos, el foro apelado debió darle credibilidad al testimonio y el informe rendido por el perito. Ello nos lleva a concluir que el documento sobre advertencias no fue firmado por la Sra. Acevedo. Ciertamente, esto levanta dudas en torno a la credibilidad en los testimonios de los agentes, ya que ambos declararon haber visto a la Sra. Acevedo firmar el aludido documento. Otro elemento de desconfianza e incredulidad sobre el testimonio de la agente Arocho lo es el hecho de que el perito encontró elementos de comparación en la alegada firma de la Sra. Acevedo con la escritura de la agente Arocho. No obstante, somos del criterio de que aun en el caso de que la Sra. Acevedo no hubiese firmado el referido documento, dicho hecho por sí sólo no es indicativo de que el procedimiento se hubiera llevado de forma negligente o que ocasionara algún daño.

Como ya mencionáramos, el arresto sin orden puede llevarse a cabo por un agente del orden público cuando éste tuviera motivos fundados para pensar que se está cometiendo un delito en su presencia. En el presente caso, al concederle credibilidad al relato del agente Soto, quedaron establecidos los motivos fundados para legitimar la intervención.

En cuanto al reclamo de daños y perjuicios por la alegada violación de derechos civiles, coincidimos con el tribunal apelado en cuanto expone que los demandantes no probaron haber sufrido un daño real. Surge del testimonio del Dr. José Zamora Álvarez que éstos sólo visitaron al doctor unas cinco (5) ocasiones, a saber, el 5 de octubre de 2000, el 14 de diciembre de 2000 y el 8 de marzo, el 28 de junio y el 2 de octubre de 2001.

El juicio en su fondo se celebró el 13 de mayo de 2004, en el que no se presentó evidencia en cuanto a los tratamientos que estuvieran siguiendo los demandantes para tratar sus alegadas condiciones. De ahí que resulta forzoso concluir que de la prueba presentada no surgía que los demandantes hubieran sufrido un daño por el que procediera la concesión de una indemnización.

Por los fundamentos antes expuestos, confirmamos la sentencia apelada.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria.

Mildred I. Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 125

1. La causa de acción del menor fue desistida por los padres de éste.

2. Este artículo condena a cualquier persona que utilice menores de edad en la transportación, fabricación, distribución o dispensación de sustancias controladas. 24 L.P.R.A. § 2411.

3. El articulado condena a quien fabrique, distribuya, dispense, transporte u oculte, o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada. 24 L.P.R.A. § 2401. ·

4. En lo pertinente, la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que:

*"Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello*

*únicamente cuando exista causa probable apoyada en juramento o afirmación describiendo particularmente el lugar a registrarse, y las personas a detenerse o los casos a ocuparse."*

**5.** Santos Briz, *Comentarios al Código Civil y compilaciones forales,* España, Ed. Rev. Der. Privado, 1984, T. XXIV; H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* San Juan, **Publicaciones JTS**, 1986; *Sociedad de Gananciales v. González Padín,* 117 D.P.R. 94 (1986).

**6.** A base de esta disposición estatutaria se establece *"una presunción legal de culpabilidad de las personas citadas en él, pues, en razón a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que le es imputable la causa del mismo por su propia culpa o negligencia, considerándoles como autores morales de dicho daño por no haber puesto de su parte el cuidado o la vigilancia necesaria para evitar que aquellos dieran lugar a él."* Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual,* 4ta Ed. Rev., San Juan, Facultad de Derecho, Universidad Interamericana de Puerto Rico, 2000, a la pág. 550.

**7.** Véase además, *García Pagán v. Shiley Caribbean,* 122 D.P.R. 193, 205-206 (1988); J. Santos Briz, *La responsabilidad civil, derecho sustantivo y derecho procesal,* 2da Ed. Rev., Madrid, Ed. Montecorvo, 1977, p. 126; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales,* Madrid, Ed. Edersa, 1984, T. XXIV, p. 156.

**8.** *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 450 (1985).

**9.** *Belk v. Martínez,* 146 D.P.R. 215, 232 (1998).

**10.** T.O. de 6 de abril de 2005, a la pág. 25.

**11.** T.O. de 6 de abril de 2005, a la pág. 40.

**12.** T.O. de 6 de abril de 2005, a las págs. 21-22.

**13.** T.O. de 6 de abril de 2005, a la pág. 34.

**14.** T.O. del 13 de mayo de 2004, páginas 34-58. Cabe mencionar que la agente Arocho era testigo de la parte demandada, pero las partes estuvieron de acuerdo en invertir el orden de la prueba.

**15.** Indica que la Sra. Acevedo iba esposada al igual que los demás detenidos, no así el menor.

**16.** Este es el documento titulado *"Advertencias que deberán hacerse a un sospechoso y/o acusado".*

**17.** T.O. del 13 de mayo de 2004, páginas 59-132.

**18.** Se refiere a esta persona como su madre, pero es realmente su abuela.

**19.** El joven resultó ser Jeffrey Marti Acevedo, quien también resultó arrestado esa noche. El caso en su contra terminó mediante acuerdo de culpabilidad por reclasificación de delito.

**20.** Describe al menor como un nene chiquito de 10-12 años, con aspecto de indio. Vestía dos (2) suéteres blancos y pantalón crema.

**21.** Describe a la mujer vistiendo pantalones de mahón bien cortos, con camisa a cuadros ajustada y de pelo color castaño oscuro recogido en un rabo.

**22.** Habían otros agentes ubicados en distintos lugares del sector.