ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| EBIEZER CARRER MELÉNDEZ, *et al.*<br><br>Apelante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, *et al.*<br><br>Apelada | **TA2026AP00034** | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV01927<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## <u>SENTENCIA</u>

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparecen ante este foro Ebiezer Carrer Meléndez, Samuel Carrer Meléndez, María A. Vega, Dolores Meléndez Lozano, Teddy M. Meléndez Vega, y Elvis N. Meléndez Vega, todos miembros de la Sucesión de Ivette J. Meléndez Vega (en conjunto, Sucesión Meléndez o "parte apelante") y nos solicitan que revisemos varias determinaciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón. La primera determinación una *Sentencia Parcial* notificada el 30 de octubre de 2025, mediante la cual el foro primario desestimó con perjuicio las causas de acción presentadas en contra de Silkia M. Figueroa Sierra, Yarimar Pantojas García, y Ana I. Escobar Pabón en su carácter personal. En cuanto a la segunda determinación, una *Sentencia Parcial* notificada el 29 de diciembre de 2025, donde el foro *a quo* declaró *Ha Lugar* la solicitud de desestimación instada por Celia Cosme Márquez en su capacidad personal.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** las determinaciones apeladas.

I.

El 14 de abril de 2025, la Sucesión Meléndez presentó una *Demanda* sobre daños y perjuicios; daños compensatorios u punitivos; honorarios de abogado; muerte ilegal – acción heredada o patrimonial / acción directa o personal en contra del Estado Libre Asociado de Puerto Rico, representado por la Hon. Secretaria de Justicia, Janet Parra Mercado; el Departamento de Corrección y Rehabilitación de Puerto Rico, representado por Francisco Rodríguez Quiñones (DCR); Centro Médico Correccional; **Ana Escobar Pabón (señora Escobar)** en su carácter personal y oficial, su esposo "Fulano de Tal" y la Sociedad Legal de Gananciales compuesta por ambos; **Celia Cosme Márquez (señora Cosme)** en su carácter personal y oficial, su esposo "Mengano de Tal" y la Sociedad Legal de Gananciales compuesta por ambos; Técnica Sociopenal, Julissa Beauchamp Ríos en su carácter personal y oficial, su esposo "Zutano de Tal" y la Sociedad Legal de Gananciales compuesta por ambos; Técnica de Servicios Sociopenal Principal **Yarimar Pantojas García (señora Pantojas)** en su carácter personal y oficial, su esposo "Zutano de Tal" y la Sociedad Legal de Gananciales compuesta por ambos; Oficiales John Doe (1)(2)(3) en su carácter personal y oficial como oficiales y/o agentes del Departamento de Corrección y Rehabilitación; sus Supervisores y/o asignados a las Unidades de los "Funcionarios" del Departamento de Corrección y Rehabilitación como Supervisores de Nombre Desconocido en su carácter personal y como funcionarios incluyendo a **Silkia**

**Figueroa (señora Figueroa)**, Efraín Afanador Vázquez, Director del Programa de Comunidad de Arecibo, entre otros codemandados.[1]

En esencia, solicitaron daños debido al asesinato de la Sra. Ivette Joan Meléndez Vega (señora Meléndez). Sostuvieron que, el 22 de abril de 2024, fueron sometidos los cargos criminales por asesinato en contra del Sr. Hermes Ávila Vázquez (señor Ávila), quien confesó haber asesinado a la señora Meléndez. Los apelantes añadieron que, la causa próxima de la muerte fue la negligencia del DCR, así como del Physician Correctional, empresa que realizó la evaluación del señor Ávila, y de varios médicos y funcionarios del ELA, incluyendo a las codemandadas. La familia Meléndez sostuvo que la inobservancia de las obligaciones impuestas por las leyes y reglamentos vigentes fueron la causa de muerte de la señora Meléndez.

Asimismo, la parte apelante esbozó que la mala implementación, la falta de capacitación y las decisiones de gestión de personal por parte de las codemandadas fueron parte de las causas que resultaron en la muerte de la señora Meléndez. Por ello, solicitaron fuera declara *Ha Lugar* la *Demanda* y concediera daños compensatorios, daños punitivos, costas, gastos y honorarios de abogado.

Posteriormente, el 29 de septiembre de 2025, la señora Figueroa; la señora Pantojas y la señora Escobar, todas en su carácter personal, presentaron una *Moción de Desestimación*.[2] Mediante esta, manifestaron que las alegadas actuaciones en su contra no eran constitutivas

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Moción de Desestimación*, entrada núm. 119 en SUMAC.

de indiferencia deliberada y no podían considerarse como actuaciones intencionales en contra de los apelantes. A su vez, plantearon que las alegaciones en su contra no presentaban elementos necesarios para excluir la aplicación de la doctrina de inmunidad condicionada. Arguyeron que, la demanda no expuso alegaciones especificas dirigidas a la capacidad personal de las codemandadas, sino sobre sus funciones dentro del DCR. Por consiguiente, solicitaron la desestimación con perjuicio de la demanda en su contra.

El 14 de octubre de 2025, los apelantes presentaron su *Oposición a "Moción de Desestimación"*.[3] Alegaron que no procedía la desestimación de la demanda, debido a que, las codemandadas incurrieron en múltiples fallas institucionales, entre ellas: (1) que permitieron la liberación de un convicto sin el cumplimiento de evaluaciones clínicas obligatorias; (2) omitieron medidas correctivas ante incumplimientos de supervisión; y (3) desatendieron advertencias internas sobre el riesgo de reincidencia.

Evaluadas las mociones, el 30 de octubre de 2025, el foro primario notificó la primera *Sentencia Parcial* apelada.[4] En la cual, concluyó que procedía la desestimación con perjuicio de las acciones en contra de las señoras Figueroa, Pantojas y Escobar. Indicó que, la Sucesión Meléndez no alegó ni explicó qué derecho civil había sido violado, por lo que, no demostraron tener derecho a reclamar por violación a la Sección 1983 de la *Ley Federal de Derechos Civiles*. A su vez, indicó que tampoco procedían las reclamaciones personales en

---

[3] *Oposición a "Moción de Desestimación"*, entrada núm. 130 en SUMAC.
[4] *Sentencia Parcial*, entrada núm. 140 en SUMAC.

contra de las codemandadas, debido a que, no fueron ellas quienes violaron los derechos civiles de la señora Meléndez, sino el señor Ávila. Añadió que, tampoco hubo intención de violar los derechos de la Sucesión Meléndez. Dispuso que, de los hechos sólo alegaron que las codemandadas se equivocaron al no seguir los protocolos y reglamentos establecidos por el DCR para la liberación del señor Ávila. Sin embargo, señaló que no surgió que las codemandadas actuaron intencionalmente o con malicia, fuera de sus deberes como funcionarias.

En desacuerdo, el 13 de noviembre de 2025, la Sucesión Meléndez presentó una *Moción de Reconsideración*.[5] No obstante, en la misma fecha el foro apelado notificó una *Resolución Interlocutoria* mediante la cual la declaró *No Ha Lugar*.[6]

Posteriormente, el 8 de diciembre de 2025, la señora Cosme presentó una *Moción de Desestimación*.[7] Alegó que, procedía la desestimación con perjuicio de la demanda, en cuanto a su capacidad personal. Esbozó que, las alegadas actuaciones realizadas no fueron constitutivas de indiferencia deliberada y no podían considerarse actuaciones intencionales en contra de los apelantes. Asimismo, sostuvo que la demanda no expuso alegaciones específicas dirigidas a su capacidad personal, sino que eran bajo las funciones como Directora del Programa de Desvío del DCR. Por lo cual, invocó que estaba cobijada por la inmunidad condicionada reconocida a los funcionarios públicos que han actuado en el descargo de sus funciones y ejercieron los deberes ministeriales de sus cargos.

---

[5] *Moción de Reconsideración,* entrada núm. 149 en SUMAC.
[6] *Resolución Interlocutoria*, entrada núm. 150 en SUMAC.
[7] *Moción de Desestimación*, entrada núm. 161 en SUMAC.

En desacuerdo, el 23 de diciembre de 2025, los apelantes presentaron su *Oposición a "Moción de Desestimación"*.[8] En esta, reiteraron que la señora Cosme cometió fallas institucionales y negligencia grave como parte de sus deberes de supervisión, fuera de los límites de la buena fe. Asimismo, arguyeron que incumplió con las políticas públicas obligadas por el DCR, generando un resultado fatal. Por lo cual, su conducta había sido irrazonable y temeraria, siendo incompatible con la protección de inmunidad condicionada.

El 29 de diciembre de 2025, el foro primario notificó la segunda *Sentencia Parcial* apelada, en la cual declaró *Ha Lugar* la solicitud de desestimación de la señora Cosme, en su capacidad personal.[9]

Aun inconformes, el 12 de enero de 2026, la parte apelante presentó el recurso de epígrafe, mediante el cual formuló los siguientes señalamientos de error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LAS RECLAMACIONES EN EL CARÁCTER PERSONAL DE LAS FUNCIONARIAS SILKIA M. FIGUEROA SIERRA, YARIMAR PANTOJAS GARCÍA, ANA I. ESCOBAR PABÓN Y CELIA COSME MÁRQUEZ EN UNA ETAPA TEMPRANA DEL PLEITO, SIN PERMITIR DESCUBRIMIENTO DE PRUEBA.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ADJUDICAR LA INMUNIDAD CUALIFICADA COMO UNA CUESTIÓN DE DERECHO Y NO DE HECHO, A PESAR DE QUE LAS ALEGACIONES DE LA DEMANDA SON SUFICIENTES PARA SOSTENER AL MENOS PREVIO AL DESCUBRIMIENTO DE PRUEBA LA INDIFERENCIA DELIBERADA, NEGLIGENCIA GRAVE Y VIOLACIONES REGLAMENTARIAS.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXIGIR UN NIVEL DE ESPECIFICIDAD PROBATORIA IMPROPIA PARA LA ETAPA DE ALEGACIONES, CONTRARIO A LA REGLA 6.1 DE PROCEDIMIENTO CIVIL.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL INTERPRETAR ERRÓNEAMENTE LA SECCIÓN 1983 DE LA LEY FEDERAL DE DERECHOS CIVILES,

---

[8] *Oposición a "Moción de Desestimación"*, entrada núm. 170 en SUMAC.
[9] *Sentencia Parcial*, entrada núm. 174 en SUMAC.

LIMITANDO SU ALCANCE A VIOLACIONES FÍSICAS DIRECTAS COMETIDAS POR FUNCIONARIOS PÚBLICOS.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR INCORRECTAMENTE QUE NO SE ALEGÓ LA VIOLACIÓN DE UN DERECHO CONSTITUCIONAL CLARAMENTE ESTABLECIDO.

El 20 de enero de 2026, emitimos una *Resolución* mediante la cual le concedimos a la parte apelada el término dispuesto en nuestro Reglamento, según enmendado, para presentar su alegato.

El 11 de febrero de 2026, las señoras Figueroa; Pantojas; y Escobar presentaron su alegato en oposición.

## II.

### -A-

La Regla 10.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra antes de contestarla cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará. *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 83 (2023); *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043 (2020). A tales efectos, la precitada regla establece lo siguiente:

Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;

(6) dejar de acumular una parte indispensable.

Por lo tanto, para disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Eagle Security v. Efrón Dorado et al.,* supra, pág. 84; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994).

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Eagle Security v. Efrón Dorado et al.,* supra; *Pressure Vessels PR v. Empire Gas PR*, supra, pág. 505. Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada. *Colón v. Lotería*, 167 DPR 625, 649 (2006).

Ahora bien, una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, obliga al demandante que se opone a establecer por qué la reclamación que presentó es del tipo que justifica un remedio legal. *Conde Cruz v. Resto Rodríguez,* supra.

Además, dicha norma procesal establece que, si en una moción de desestimación en la que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y estas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción conforme a dicha regla. Sobre ello, nuestro Tribunal Supremo determinó lo siguiente:

> La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración. Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria. *Capeles v. Alejandro*, 143 DPR, 300, 309 (1997). (Citas omitidas).

-B-

Nuestro esquema procesal no exige requisitos complicados para la redacción de una acción judicial. *Rivera Candela v. Universal Insurance Company*, 214 DPR 1007 (2024); *León Torres v. Rivera Lebrón*, 204 DPR 20,

40 (2020). A esos fines, la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, regula los elementos concernientes a las alegaciones, a saber: (1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. Podrán, también, ser solicitados remedios alternativos o de diversa naturaleza. 32 LPRA Ap. V, R. 6.1.

Basta redactar una información inicial escueta de los hechos pues las alegaciones serán ampliadas "como resultado de los procedimientos posteriores de descubrimiento de prueba." *Rivera Candela v. Universal Insurance Company*, supra, citando a J.A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 3a ed. rev., Bogotá, Ed. Nomos, S.A., 2023, pág. 92. Lo esencial es notificar a la parte adversa, a grandes rasgos, sobre cuáles son las reclamaciones en su contra para que pueda comparecer si así lo desea. *Torres, Torres v. Torres Serrano,* 179 DPR 481, 501 (2010); *Sánchez v. Aut. de los Puertos, Sánchez v. Aut. de los Puertos*, 153 DPR 559, 569-570 (2001).

No obstante, cuando la reclamación judicial instada carezca de alegaciones específicas o suficientes, la parte adversa tiene el derecho de solicitar la desestimación a tenor con la Regla 10.2(5) de Procedimiento Civil, *supra*. 32 LPRA Ap. V, R. 10.2(5). Véase, además: *Eagle Security Police, Inc. v. Dorado*, 211 DPR 70, 83 (2023). En específico, el precitado inciso reglamentario dispone que procede la desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio. 32 LPRA Ap. V, R. 10.2(5). No obstante, como norma general, no procede

la desestimación salvo se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera,* 184 DPR 407, 423 (2012).

En dichos casos, el tribunal tiene el deber de interpretar las alegaciones de manera conjunta y liberalmente a favor de la parte demandante para facilitar el amparo judicial. *Eagle Security Police, Inc. v. Dorado*, supra, pág. 85. Particularmente le compete "ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida." *Íd*. Ello evita que un litigante quede privado de su día en corte, que es una medida procedente solo en casos extremos. *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307.

De otra parte, nuestro Tribunal Supremo en el caso *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 397 (2022), discute el examen aplicable a las mociones fundamentadas en la insuficiencia de las alegaciones:

> [A]l interpretar de manera conjunta las citadas Reglas 6.1 y 10.2, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por

cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo.

Una vez el juzgador analice ponderadamente que, de manera principal o en la alternativa, no existe remedio alguno en derecho, se encontrará en posición para decidir si desestima total o parcialmente una demanda. *La Comisión de los Puertos de Mayagüez v. González Freyre*, 211 DPR 579, 615 (2023). Si luego comprende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la acción judicial, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se probarán las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena v. Magic Sport Culinary Corp.*, supra, citando a R. Hernández Colón, *op. cit.* En cambio, si concluye que las alegaciones cumplen con el estándar de suficiencia le corresponde denegar la petición de desestimación.

-C-

Como cuestión de política pública, los servidores públicos gozan de inmunidad condicionada contra demandas presentadas en su contra, por el hecho de haber ejercido de forma razonable y de buena fe las funciones de su cargo que contienen un elemento de discreción. *De Paz Lisk v. Aponte Roque*, 124 DPR 472, 495 (1989). Dicha inmunidad "opera como una limitación sustantiva de la responsabilidad personal por daños en que puedan incurrir dichos funcionarios en el descargo de sus deberes y responsabilidades oficiales." *García v. ELA*, 163 DPR 800, 820 (2005). Así pues, permite que los funcionarios actúen con libertad y tomen decisiones sin

sentir amenazas contra sus patrimonios. *De Paz Lisk v. Aponte Roque,* supra, pág. 495.

La doctrina de inmunidad condicionada protege, en su carácter personal, a los funcionarios que ejercen funciones discrecionales, sobre las reclamaciones civiles en daños y perjuicios que estos puedan ocasionar, siempre y cuando sus actuaciones no violen derechos civiles o derechos claramente establecidos por la ley o la Constitución, de los cuales cualquier persona razonable hubiera tenido conocimiento. *De Paz Lisk v. Aponte Roque*, supra, págs. 494-495. Así pues, se protege a los funcionarios de reclamaciones frívolas que puedan impedir que estos descarguen los deberes y responsabilidades de sus cargos, dentro del ejercicio de sus funciones discrecionales. *Íd.*

La inmunidad que puede cobijar a un funcionario público es condicionada y no absoluta. *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256, 262 (1982). Se entiende como condicionada la inmunidad del funcionario público, pues dicha defensa afirmativa se vuelve inoperante y el funcionario responde en su carácter personal, cuando: "[…] actuó irrazonablemente o si debió haber sabido que su conducta era ilegal." *Íd.*, pág. 262. La razonabilidad de la actuación es una cuestión de hecho que los tribunales determinarán, según las circunstancias del caso particular. *Íd.* Hay que destacar que la inmunidad condicionada del empleado público no surge en el abstracto, sino que tiene que estar reconocida por una ley o por la jurisprudencia.

Dicha inmunidad no cubre actuaciones dolosas, maliciosas o delictivas de un funcionario en el ejercicio de sus funciones. Un funcionario que actúa de

mala fe, y viola los derechos civiles o los derechos claramente establecidos por la ley o la Constitución, responde civilmente por los daños ocasionados. De hecho, aun cuando medie buena fe de parte del funcionario, este responde si actuó irrazonablemente o si debió saber que su conducta era ilegal. *In re Colton Fontán*, 128 DPR 1, 8 (1991); *Acevedo v. Srio. Servicios Sociales,* supra, pág. 262. La razonabilidad de la actuación oficial constituye una cuestión de hecho a determinarse caso por caso. *Acevedo v. Srio. Servicios Sociales*, supra, pág. 262. Consecuentemente, el peso de la prueba recae sobre el funcionario demandado que reclama dicha protección. *Íd.*, pág. 263. Más aún, y en vista que el reconocimiento de la inmunidad condicionada implica la inexistencia de una causa de acción contra el funcionario en su carácter personal, una vez planteada la defensa, es recomendable que tal asunto se resuelva antes de la celebración del juicio. *García v. ELA*, supra, págs. 820-821.

Al evaluar una reclamación de esta índole, los tribunales deben acudir a las normas generales que nuestro Tribunal Supremo estableció sobre la culpa y la negligencia en materia de responsabilidad extracontractual, conforme a los Arts. 1536 y 1540 del Código Civil, 31 LPRA secs. 10801 y 10805. Así, para analizar si aplica la doctrina de inmunidad condicionada, se deben de ponderar dos criterios esenciales:

> 1. El funcionario que no actúa de buena fe, es responsable, pero aun cuando actúa con buena fe, responde si lo hizo de manera irrazonable o debió saber que su conducta era ilegal.

2. El servidor público no responde de reclamaciones por alegadas violaciones constitucionales, a menos que la norma violada haya estado claramente establecida, esto es, cuando sus actuaciones no violen derechos civiles o derechos claramente establecidos por la Constitución o la ley, de los cuales cualquier persona razonable hubiera tenido conocimiento. *Acevedo v. Srio. Servicios Sociales*, supra, pág. 263. Sólo después de resuelta la controversia sobre los hechos materiales del caso, el tribunal sentenciador podrá determinar si las actuaciones del funcionario público fueron objetivamente razonables, de manera que le cobije la inmunidad condicionada. *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002); *Swain v. Spinney*, 117 F.3d 1, 9-10 (1st Cir. 1997).

### III.

En el caso de autos, la Sucesión Meléndez, en esencia, alega que incidió el foro primario al desestimar con perjuicio la demanda contra las codemandadas, en su carácter personal.

Arguyen que erró el foro primario al plantear que éstos no habían identificado el derecho violentado. Sin embargo, sostienen que el derecho a la vida y a la seguridad personal están protegidos por la Constitución de Puerto Rico y la de los Estados Unidos. Por ello, reiteraron que están ejerciendo una acción personal, así como el derecho patrimonial de la señora Meléndez.

De otra parte, sostienen que erró el foro *a quo* al concluir que la Sección 1983 de la *Ley Federal de Derechos Civiles* sólo castiga la violación directa del funcionario, sin embargo, que dicha conclusión desvirtúa la jurisprudencia federal y local, la cual reconoce la responsabilidad por omisión, supervisión negligente o indiferencia deliberada. Plantean que, la conducta negligente e irrazonable de las codemandadas fue la causa próxima y previsible del daño constitucional. Asimismo, mencionan que las codemandadas no fueron meras

observadoras, sino quienes gestionaros, aprobaron y supervisaron la liberación del señor Ávila. Por ello, la omisión en cumplir con las normas reglamentarias de seguridad creó el riesgo y lo transfirió a la comunidad libre. Así las cosas, resaltan que el foro primario erró al adjudicar que las actuaciones de las codemandadas habían sido "simples errores administrativos".

Por otro lado, argumentan que el foro apelado no podía resolver dicha defensa afirmativa sin evidencia sobre la participación real de las funcionarias, sino que debió esperar al descubrimiento de prueba. Por lo tanto, reclamaron que fueron privados del derecho a probar hechos que podían derrotar la inmunidad condicionada.

Examinado el recurso, así como los documentos del expediente judicial, nos corresponde determinar si erró el Tribunal de Primera Instancia al desestimar con perjuicio la demanda contra las codemandadas en su carácter personal bajo el fundamento de inmunidad condicionada y ausencia de causa de acción. Adelantamos, que no erró el foro primario en sus determinaciones.

La Sucesión Meléndez alega que las codemandadas no podían ampararse en la inmunidad condicionada debido a que no cumplieron con los protocolos y reglamentos, provocando la salida del señor Ávila y que incurriera en un delito grave. Reiteran que, las normas no confieren discreción, sino que les imponían deberes ministeriales que requerían su cumplimiento estricto.

En nuestro ordenamiento jurídico, la responsabilidad civil de los funcionarios públicos está

regida por la *Ley de Reclamaciones y Demandas contra el Estado*, *supra*. Dicha ley dispone que el Estado asumirá la responsabilidad por los daños causados por los funcionarios públicos cuando éste último actúe negligentemente u omita actuar según su deber, dentro del marco de sus funciones. *García v. ELA*, 163 DPR 800 (2005), citando a *García v. ELA,* 146 DPR 725, 735 (1998).

De otra parte, en *Anderson v. Creighton*, 483 US 635, 638-640, 646 (1987), el Tribunal Supremo de Estados Unidos reiteró y aclaró la doctrina sobre inmunidad condicionada, la cual ha sido adoptada en términos generales por el Tribunal Supremo de Puerto Rico. Véase, *Romero Arroyo v. ELA,* 127 DPR 724 (1991); *Sánchez Soto v. ELA*, 128 DPR 497 (1991); *De Paz Lisk v. Aponte Roque*, supra. A esos efectos *De Paz Lisk v. Aponte Roque*, supra, expuso:

> No cabe duda de que como cuestión de política pública es menester que los servidores públicos estén protegidos contra demandas presentadas en su contra por el hecho de haber ejercido de forma razonable y de buena fe funciones que contienen un elemento de discreción. Se persigue que estos funcionarios actúen con libertad y tomen decisiones sin sentir presiones y amenazas contras sus patrimonios.

No obstante, la inmunidad condicionada no es una protección absoluta. Para que un funcionario pierda dicha protección y tenga que responder en su carácter personal, se deben de ponderar dos (2) criterios esenciales:

> 1. El funcionario que no actúa de buena fe, es responsable, pero aun cuando actúa con buena fe, responde si lo hizo de manera irrazonable o debió saber que su conducta era ilegal.
>
> 2. El servidor público no responde de reclamaciones por alegadas violaciones constitucionales, a menos que la norma violada haya estado claramente establecida,

esto es, cuando sus actuaciones no violen derechos civiles o derechos claramente establecidos por la Constitución o la ley, de los cuales cualquier persona razonable hubiera tenido conocimiento. *Acevedo v. Srio. Servicios Sociales,* supra, pág. 263.

En el caso de autos, la *Demanda* indicaba que debido a la mala implementación, falta de capacitación y las decisiones de gestión de personal por parte de las codemandadas las que resultaron en la muerte de la señora Meléndez. Estas son tareas inherentes a los cargos que ocupan las codemandadas. El alegado incumplimiento de reglamentos o supervisión deficiente constituyen negligencia, pero no transforman la actuación oficial en una de carácter personal o maliciosa. Por lo que, al no existir alegaciones fácticas de malicia o intención criminal, la inmunidad condicionada impide la continuación de las causas de acción contra las señoras Figueroa, Pantojas, Escobar y Cosme.

De otra parte, la Sucesión Meléndez expone que la inmunidad condicionada no le era de aplicación a las codemandadas, debido a la violación a los derechos civiles (vida y seguridad personal). Sin embargo, dicho planteamiento choca con la doctrina establecida en *DeShaney v. Winnebago County Dept. of Social Services*, 489 US 189 (1989). Para plantear judicialmente una violación a un derecho constitucional es necesario una actuación del Estado. Las actuaciones puramente privadas, salvo en contadas excepciones, no pueden servir de fundamento a una alegación de violación a un derecho constitucional. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C., Abo, PR, 1988, Vol. II, pág. 799; *DeShaney v. Winnebago County Dept. of Social Services*, supra;

*National Collegiate Athletic Ass'n v. Tarkanian*, 488 US 179, 191 (1988).

Asimismo, la Ley Federal de Derecho Civiles, *supra*, dispone que todo aquel funcionario que so color de autoridad viole derechos claramente establecidos en alguna ley federal o la Constitución, vendrá obligado a responder personalmente por el daño causado, sin que le asista inmunidad alguna. Sin embargo, para que la parte demandante pueda prevalecer en una acción por violación a derechos civiles bajo este estatuto, debe demostrar que la parte demandada actuó so color de autoridad y que esta actuación lo privó de los derechos garantizados por la Constitución y las leyes de los Estados Unidos. *Parratt v. Taylor*, 451 US 527, pág. 535 (1981), revocado en otro aspecto en *Daniels v. Williams*, 474 US 327 (1986); *Leyva et al. v. Aristud et al.*, supra, pág. 501.

A su vez, la parte demandante tenía la carga procesal de establecer un nexo causal suficiente entre el acto u omisión y la presunta violación al derecho constitucional federal protegido. *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir.1999). En otras palabras, la *Demanda* debía contener hechos plausibles que demostraran una indiferencia deliberada por la parte demandada. Así pues, en acciones instadas al amparo de la Sección 1983, no basta una alegación general para que el tribunal pueda imponer responsabilidad personal al funcionario.

Finalmente, la Sucesión Meléndez alega que incidió el foro primario al desestimar la demanda sin permitirles el descubrimiento de prueba y exigirles mayor especificidad.

El Tribunal Supremo de Puerto Rico pautó la normativa sobre una desestimación al amparo de la Regla

10.2(5) de Procedimiento Civil. Determinó que, "los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente." *Costas Elena v. Magic Sport Culinary Corp*., 213 DPR 523 (2024). "Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio." *Íd*. "[S]i tras este análisis el Tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba." *Íd*.

En el presente caso, tomando de la manera más favorable e interpretando del modo más liberal a favor de la parte apelante para que sus reclamos sean atendidos en sus méritos, no albergamos duda acerca de que las codemandadas no debían permanecer como partes -en su carácter personal- en el pleito. En la demanda, los apelantes, no lograron establecer, mediante sus alegaciones o un ápice de prueba, por qué la omisión de las codemandadas respondía a la mala fe o dolo. El descubrimiento de prueba no esta diseñado para permitir que una parte demandante intente "pescar" una intención maliciosa que no pudo alegar razonablemente desde el inicio.

Consecuentemente, resolvemos que el foro primario no cometió los errores señalados por los apelantes. El foro *a quo* evaluó correctamente las alegaciones presentadas, aplicó correctamente la doctrina de inmunidad condicionada y concluyó conforme a derecho que

la demanda no exponía un causa de acción que justificara la concesión de un remedio contra las codemandadas en su carácter personal. Por lo tanto, confirmamos las determinaciones apeladas.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** las determinaciones apeladas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones